[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
{¶ 1} This appeal stems from a judgment rendered by the Lake County Court of Common Pleas, granting summary judgment in favor of appellees, Able/S.S., Inc. ("Able" or "the corporation" or "the company"), David J. Richards ("Mr. Richards"), and Sam J. Syracuse ("Mr. Syracuse"), on the claims of appellants, Eugene S. Canfield ("Eugene") and Kevin P. Canfield ("Kevin"), for breach of employment contract, breach of oral agreement, fraudulent misrepresentation, conversion, and fraud. For organizational purposes, we will consider the arguments raised by Kevin, followed by those advanced by Eugene.
 {¶ 2} The following is the factual background concerning the matters on appeal. According to Kevin's deposition testimony, he was employed by Able, a construction business, in May 1999. Kevin alleged in his affidavit that he was orally authorized to lease a vehicle on behalf of the corporation. Kevin admitted he did not have a written employment contract with Able. However, according to Kevin's affidavit, Mr. Syracuse, the vice-president of Able, stated that he would be employed with the corporation "through the summer of 1999." (Emphasis added.) Kevin was subsequently terminated in July 1999.[1]
 {¶ 3} Similarly, Eugene was also employed by Able. During his tenure, Eugene claimed to be the treasurer of the corporation and was allegedly given authority to invest the corporation's money in an Internet service provider known as Midwest Web, Inc.
 {¶ 4} On August 2, 1999, Able filed a complaint against various defendants, including Eugene and Kevin. Generally speaking, Able alleged that from 1996 through 1998, Eugene, in his capacity as treasurer and manager of Able, fraudulently converted funds of the corporation, and that Kevin, along with the other defendants, were aware of and benefited from this illegal activity.
 {¶ 5} Eventually, on February 10, 2000, Kevin filed an amended answer and counterclaim to Able's complaint, maintaining in relevant part two separate causes of action. First, Kevin maintained that he was wrongfully terminated. In his counterclaim, Kevin alleged that while he was employed by Able in May 1999, he was promised by Mr. Syracuse that he would be employed "through the year." (Emphasis added.)[2] Based on Mr. Syracuse's representation, Kevin claimed that he "moved the office from Painesville to Cleveland."
 {¶ 6} Second, Kevin claimed that based on an oral agreement with Mr. Syracuse and Mr. Richards (the president of Able), he leased a 1998 Dakota truck from National City Bank ("National City"). At most, Kevin signed the lease not only as a secretary for an unnamed principal, but also as an individual. According to him, "[he] was called upon by National City to pay [$6,533] for the repossessing cost and sale of the Dakota." Kevin further claimed that "National City Bank believes that * * * Kevin * * * is responsible for this debt [and] [i]f [Kevin] has to pay this debt, [Able] should be held liable to Kevin Canfield for any amounts expended to National City Bank."[3]
 {¶ 7} Kevin also filed a third party complaint against Mr. Syracuse and Mr. Richards on February 10, 2000. National City was never named a party to any part of this action. In relevant part to this appeal, Kevin realleged that based on the "[oral] representations of Sam Syracuse and Dave Richards, [he] lease[d] a 1998 Dakota Truck from National City Bank for the business of Able/SS[,]" and that he signed the lease "as secretary of the corporation, and also, as an individual." Subsequently, Kevin "was called upon by National City to pay [$6,533] for the repossessing cost and sale of the Dakota." Kevin claimed that "National City Bank believes that [Kevin] is responsible for this debt and * * * Sam Syracuse and Dave Richards should be liable to National City Bank." According to Kevin,"[i]f [he] has to pay this debt, then Sam Syracuse, Dave Richards, and Able/SS should be held liable for it."
 {¶ 8} Kevin also maintained in his third party complaint that Mr. Syracuse fraudulently misrepresented to him that "he would be employed for one (1) year * * *." (Emphasis added.) Instead, Kevin was terminated in July 1999. Based on Mr. Syracuse's representation, Kevin claimed he "took the job and moved his office from Painesville to Cleveland." (Emphasis added.) According to Kevin's third party complaint, he "could have received employment elsewhere at the time and based on the representations of Sam Syracuse, he did not take the other jobs."[4]
 {¶ 9} On March 22, 2000, appellees filed a motion to dismiss, or in the alternative, a motion for summary judgment as to Kevin's counterclaim and as to the following claims contained in the third party complaint: (1) breach of oral agreement concerning the lease of the vehicle; and (2) fraudulent misrepresentation by Mr. Syracuse that Kevin would be employed for one year.
 {¶ 10} As to the claim for breach of employment contract, appellees argued that Kevin did not have an implied employment contract for a specified time, nor did he have an employment contract based on the doctrine of promissory estoppel. To counter the breach of oral agreement claim concerning the lease of the vehicle, appellees maintained that the statute of frauds barred this action because there was no written memorandum authorizing Kevin to lease a vehicle on behalf of Able. With respect to Kevin's claim that Mr. Syracuse falsely represented that he would be employed for one year and that he relied upon this representation by moving his office from Painesville to Euclid and turning down other employment opportunities, appellees contended that the corporation chose to relocate to Euclid, and there was no evidence that Kevin gave up any employment opportunities.
 {¶ 11} In support of their motion for summary judgment, appellees attached, inter alia, affidavits of Mr. Syracuse and Mr. Richards, Able's articles of incorporation and code of regulations, share journal and stock certificates. Appellees also submitted unfiled and uncertified portions of Kevin's deposition testimony. There was no objection as to their form or substance. As such, this deposition could be considered or not at the discretion of the trial court. Trimble-Weber v. Weber (1997),119 Ohio App.3d 402, 406; Koeth v. Time Savers, Inc. (May 26, 2000), 11th Dist. No. 99-G-2211, 2000 Ohio App. LEXIS 2273, at 12, fn. 2; Al-Najjarv. R S Imports, Inc. (Aug. 29, 2000), 10th Dist. No. 99AP-1391, 2000 WL 1220741, at 2, fn. 1. A review of the trial court's judgment entry indicates that the court apparently reviewed and considered this deposition.
 {¶ 12} In response, Kevin filed a brief in opposition to appellees' motion for summary judgment, claiming that his deposition testimony indicated that there was an understanding between himself and Mr. Syracuse that his employment would last through the summer, and that he would refrain from looking for other employment.
 {¶ 13} Kevin further argued that the lease was not his debt, but a debt of the corporation. According to Kevin's brief, there was "an oral promise by Able/SS to be responsible for [Kevin's] debt [,]" which he claimed was a corporate expense. Kevin also admitted that he was "unable to produce a writing in which the corporate books contain any reference to [his] authority to lease the truck on behalf of the company." However, he attempted to excuse this by alleging that appellees "never acted in conformance with the corporate form and never kept required minutes."
 {¶ 14} As to the fraudulent misrepresentation, Kevin claimed that in reliance on Mr. Syracuse's statement that his employment was secure, he was induced to forego seeking other employment.
 {¶ 15} To support his brief in opposition to appellees' motion for summary judgment, Kevin submitted his affidavit, and documents indicating that Donna Richards resigned as secretary of the corporation in July 1997.[5] Thus, the significance of these documents was that there must have been a vacancy at the time Kevin alleged he was functioning as a secretary.
 {¶ 16} After taking the matter under advisement, on September 1, 2000, the trial court granted appellees' motion for summary judgment as to the above-mentioned claims.[6] It is from this judgment Kevin appeals, advancing a single assignment of error and reiterating the arguments set forth in his brief in opposition to appellees' motion for summary judgment.
 {¶ 17} An appellate court reviews a trial court's decision on a motion for summary judgment de novo. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105. Pursuant to Civ.R. 56, summary judgment is appropriate when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can reach only one conclusion, which is adverse to the party against whom the motion is made, such party being entitled to have the evidence construed most strongly in his favor. Lennon v. Neil
(2000), 139 Ohio App.3d 437, 441-442.
 {¶ 18} A party seeking summary judgment on the grounds that the nonmoving party cannot prove its case bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claim. Dresher v. Burt (1996), 75 Ohio St.3d 280. Accordingly, the moving party must specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claim. Id. If the moving party satisfies its initial burden under Civ.R. 56(C), the nonmoving party has the burden to respond, by affidavit or as otherwise provided in the rule, so as to demonstrate that there is a genuine issue of fact. Id. However, if the nonmoving party fails to do so, then the trial court may enter summary judgment against that party. Id.
 {¶ 19} In the instant appeal, Kevin presents numerous issues for our review concerning the trial court's grant of summary judgment in favor of appellees. As such, we will address each one individually.
 {¶ 20} First, Kevin submits that an issue of material fact exists as to whether an employment contract was formed and violated. According to Kevin, his deposition testimony and affidavit provide factual assertions that his employment was to last at least through the summer, thereby containing a time element subject to factual dispute.
 {¶ 21} Initially, we are troubled by Kevin's current position that he was assured employment "through the summer of 1999[,]" which is also reflected in his affidavit. Clearly, this position conflicts with the statement contained in his counterclaim that "[he] was promised by Sam Syracuse that he would be employed through the year[,]" and the allegation contained in his third party complaint that "he would be employed for one (1) year * * *." (Emphasis added.) Then, during his deposition, Kevin mentioned a vague time period of "middle of the year."
 {¶ 22} As to this point, we are mindful that a party cannot create a factual issue by simply filing an affidavit that contradicts his/her earlier deposition testimony. Spatar v. Avon Oaks Ballroom, 11th Dist. No. 2001-T-0059, 2002-Ohio-2443, at ¶ 20-24; Barile v. East EndLand Dev. (Dec. 23, 1999), 11th Dist. No. 98-L-149, 1999 WL 1313639, at 7. Hence, the confusion caused by Kevin as to whether he was to be employed through the summer, through the year, for one year, or until the middle of the year does not create a factual issue.
 {¶ 23} Having said that, we return to the merits of the instant appeal. "It is well settled that under the at-will employment doctrine, absent facts and circumstances which indicate that the employment is for a specific duration or term, either side may terminate the employment relationship for any reason, not contrary to law." Gargas v. Streetsboro
(Sept. 14, 2001), 11th Dist. No. 2000-P-0095, 2001 WL 1077828, at 6. See, also, Mers v. Dispatch Printing Co. (1985), 19 Ohio St.3d 100, paragraph one of the syllabus.
 {¶ 24} Our review of the evidence fails to reveal any statements which could reasonably be construed as representations that Kevin was anything other than an at-will employee. For instance, during his deposition testimony, Kevin stated the following:
 {¶ 25} "Q. Okay. Well, tell me about what discussions you had with Mr. Syracuse on that day.
 {¶ 26} "A. * * * And then Sam [Syracuse] got on the phone and he said, `I don't want you to leave. I want you to come out to Euclid and work and bring all the people out here.'
 {¶ 27} "And I said, `Sam, I'm not coming out if I'm going to be looking for a job in the middle of the year.' [Mr. Syracuse replied] `[n]o, no, no. We want you to come out here.'
 {¶ 28} "* * *
 {¶ 29} "Q. All right. Well, you — what you're suggesting is that you told Mr. Syracuse that you weren't coming out there if you were going to be looking for a job in the middle of the year?
 {¶ 30} "A. Right.
 {¶ 31} "Q. And he said?
 {¶ 32} "A. `We want — we want you to come out and bring everybody with you.'" (Emphasis added.)
 {¶ 33} The general rule of contract formation is that there must be an offer, acceptance, consideration and a legal subject matter.Camastro v. Motel 6 Operating, L.P. (Apr. 27, 2001), 11th Dist. No. 2000-T-0053, 2001 WL 435361, at 2. Thus, for a contract to exist there must be mutual assent or a meeting of the minds as to the offer and acceptance. Marshall v. Beach (2001), 143 Ohio App.3d 432, 436-437;Camastro at 2.
 {¶ 34} In the instant matter, "the burden is upon the party asserting the existence of an employment contract, [to wit: Kevin] to prove each element necessary for the formation of the contract." Baker v.Jones Henry Engineers, Ltd. (Mar. 30, 2001), 6th Dist. No. L-00-1198, 2001 WL 304088, at 2.
 {¶ 35} It is evident from the above quoted exchange that Mr. Syracuse never promised Kevin he would be employed through the summer of 1999 or through the middle of the year. Rather, Kevin stated that he would quit if he did not have guaranteed employment beyond the middle of the year. As Kevin stated to Mr. Syracuse: "`Sam, I'm not coming out [to Euclid] if I'm going to be looking for a job in the middle of the year.'"
 {¶ 36} In response to this threat to quit, it appears that Mr. Syracuse did a masterly job of avoiding the issue, even by Kevin's account. Essentially, Mr. Syracuse sidestepped Kevin's ultimatum and simply said in effect, "Don't quit, come with us." Under these particular circumstances, there was no underlying employment contract offered for a specified time. As such, based on Kevin's own statements, he was an at-will employee, and his request for employment beyond the middle of the year was never directly or affirmatively responded to by Mr. Syracuse.
 {¶ 37} Next, we turn to the issue of whether the doctrine of promissory estoppel applies to the facts of this case. "The doctrine of promissory estoppel is applicable and binding to oral at-will employment agreements. The test in such cases is whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee." Mers at paragraph three of syllabus.
 {¶ 38} As to this point, Kevin seems to suggest on appeal that he relied to his detriment on the assurance that he would be employed through the summer if he moved his office from Painesville to Cleveland. Additionally, Kevin claimed that he refrained from seeking other employment. Even if we assume, arguendo, that Kevin was promised employment through the summer, he has not shown that his reliance on this promise was detrimental.
 {¶ 39} For instance, Kevin claimed that he relied on Mr. Syracuse's alleged statement when he moved his office from Painesville to Cleveland. Kevin's position, however, clearly conflicts with his deposition testimony wherein he admitted that company management, decided to move the company's office in the spring of 1999:
 {¶ 40} "Q. And as I understand it historically, the company had maintained its offices in Painesville, Ohio; is that correct?
 {¶ 41} "A. Yes.
 {¶ 42} "Q. And then there came a time when the company management decided to move the offices; is that correct?
 {¶ 43} "A. Yes.
 {¶ 44} "Q. And do you recall when that was?
 {¶ 45} "A. Spring.
 {¶ 46} "Q. Spring of 1999?
 {¶ 47} "A. Yes.
 {¶ 48} "Q. Okay. And is there — is it your — is it your testimony that the company's decision to move the offices from Painesville to Euclid was somehow a violation of your employment arrangement?
 {¶ 49} "A. No.
 {¶ 50} "Q. Okay. So they had a right to move their offices if — if they — if they chose to do that to —
 {¶ 51} "A. Right.
 {¶ 52} "Q. — Euclid, Ohio?
 {¶ 53} "A. Uh-huh." (Emphasis added.)
 {¶ 54} The point is that Kevin's choice was not whether to move his office, but whether to join the corporation's move to Euclid. His choice was to move or quit. The corporation, even according to Kevin, only told him they did not want him to quit and they wanted him to move with the corporation. Despite his request for employment beyond the middle of the year, Kevin's own deposition does not reflect that he was guaranteed employment for any length of time if he joined the corporation in Euclid.
 {¶ 55} Kevin further claimed that he and Mr. Syracuse had an understanding that he would refrain from seeking other employment while employed with Able. However,"[t]he law is clear that a plaintiff cannot
allege that he or she failed to pursue other unspecified employment opportunities to establish the element of detrimental reliance." (Emphasis added.) Schepflin v. Sprint-United Tel. of Ohio (Apr. 29, 1997), 5th Dist. No. 96-CA-62-2, 1997 WL 1102026, at 6. In Hanley v. RiversideMethodist Hosp. (1991), 78 Ohio App.3d 73, 80, the court explained:
 {¶ 56} "Although plaintiff claims that in reliance on defendant's promises of job security he did not seek other employment, the record contains no indication that defendant dissuaded plaintiff from pursuing specific job opportunities outside the hospital by making promises of job security. Rather, the record contains only plaintiff's bare assertion that he gave up opportunities at other employment. Plaintiff's deposition states that he neither looked for employment outside the hospital at the time defendant allegedly made the representations in issue, nor turned down any offers of employment after the alleged representations were made. Absent evidentiary support, such an assertion is insufficient to invoke the promissory estoppel exception to the employment-at-will doctrine." (Citations omitted.)
 {¶ 57} In fact, during his deposition, Kevin testified that he never looked for other employment prior to his termination:
 {¶ 58} "Q. Prior to the time that your employment with Able was terminated, did you look for a job anywhere else?
 {¶ 59} "A. No, I didn't.
 {¶ 60} "Q. So you had no — you never applied for employment elsewhere prior to the time that your employment with Able SS was terminated?
 {¶ 61} "A. No, I didn't."
 {¶ 62} In summation, Kevin failed to present evidence demonstrating that an employment contract for a specific duration existed or that the doctrine of promissory estoppel was applicable. As such, summary judgment was appropriate as to his wrongful termination claim.
 {¶ 63} In the second issue, Kevin posits that an issue of fact exists as to whether the debt to National City arising from the lease of the vehicle was a debt of appellees or his. In essence, Kevin alleged in his third party complaint and in his counterclaim that if he had to pay the debt to National City, then appellees should be held liable to Kevin and National City. According to Kevin's brief, appellees allegedly authorized him to lease a truck from National City; thus, he was alleging that the National City debt belonged to Able as an authorized business expense, not to Kevin.
 {¶ 64} Appellees responded by producing the affidavit of Mr. Richards, who averred that Kevin was never elected or appointed secretary of Able and was never authorized to lease a vehicle on behalf of the corporation.
 {¶ 65} Kevin countered by submitting his own affidavit, which stated in relevant part:
 {¶ 66} "11. Affiant was authorized to lease the Dodge truck on behalf of Able/SS.
 {¶ 67} "12. Affiant's authorization to lease the truck on behalf of Able/SS came directly from the directors.
 {¶ 68} "13. Affiant's authorization to lease the truck on behalf of Able/SS also came from the authority of his position as an officer of the corporation."
 {¶ 69} A review of the record indicates that Kevin's pleadings asserted that National City repossessed the truck and that a deficiency, presumably a judgment, existed against Kevin for $6,533. There is no indication in this repossession action by National City against Kevin that he ever asserted the defense that he was merely an agent for appellees. Nevertheless, based upon Kevin's own pleadings, there is no issue as to whether appellees were somehow directly liable to National City. This is because Kevin admitted that the repossession was against him, and that as a result of the repossession action, Kevin became solely liable to National City for the lease deficiency.
 {¶ 70} Next, Kevin maintained in his counterclaim and third party complaint that if he had to pay this debt then "[Able, Mr. Richards, and Mr. Syracuse] should be held liable to [him] for any amounts expended to National City Bank." Presumably, Kevin is arguing that he had a contractual arrangement for reimbursement.
 {¶ 71} Other theories such as indemnification are inapplicable because there has to be an underlying liability of the other alleged debtor (appellees) to the creditor/claimant (National City) for indemnification to the other debtor (Kevin) to be appropriate. For contribution to be appropriate, there must also be a common liability to the creditor/claimant. Without any direct liability to National City by appellees, both theories fail. Thus, a contract of reimbursement is the only remaining possible legal theory.
 {¶ 72} This theory is also consistent with certain facts alleged in Kevin's pleadings, to wit: that Able, in fact, made the payments on the truck. However, there was no specification as to whether the payments were made directly to Kevin or to National City.
 {¶ 73} In support of this apparent claim for contractual reimbursement, the previously quoted affidavit, Paragraphs Eleven through Thirteen, are relevant. We will address the sufficiency of each paragraph to determine if a material issue of fact has been created as to the issue of contractual reimbursement. We note that appellees' materials contained an absolute denial of any such agency or authorization by the company in Mr. Richards' affidavit.
 {¶ 74} As an aside, we note that appellees' statute of fraud defense that a writing was required to answer for the debt of another is questionable. We are unable to find any authority that the statute of frauds defense is available for use against anyone other than the original creditor, here National City. Instead, the alleged debtor, appellees, are attempting to use the defense against the debtor, Kevin, not National City.
 {¶ 75} In other words, if National City had tried to hold appellees liable on this lease, then appellees could have asserted this defense against National City's claim. Here, appellees have tried to use it directly against the debtor, Kevin. However, as will be seen, it is unnecessary for us to actually decide this issue.
 {¶ 76} Returning to an analysis of Paragraph Eleven of Kevin's affidavit, it states "Affiant was authorized to lease the Dodge truck on behalf of Able/SS." This court has repeatedly held that such a sweeping statement of opinion is insufficient as a matter of law unless supported by the underlying facts. Spatar at ¶ 108, citing Burkholder v.Straughn (June 26, 1998), 11th Dist. No. 97-T-0146, 1998 WL 553623, at 4; Evanoff v. Ohio Edison Co. (Nov. 10, 1994), 11th Dist. No. 93-P-0015, 1994 WL 652635, at 11. Thus, an allegation of the existence of a contract without a recitation of the essential elements is insufficient.
 {¶ 77} Further, the above statement is too vague to support the conclusion of agency that Kevin seeks. It is also too vague to support a claim of the creation of a contract for reimbursement. Specifically, there is no assertion as to the terms of the reimbursement contract which Kevin now alleges.
 {¶ 78} The most specific meaning that one can infer from Paragraph Eleven of Kevin's affidavit is that he claims, as an agent of some kind, he had the authority to lease the truck on behalf of Able. A claim that the acts of an agent were authorized is a legal conclusion. A person claiming agency has the burden of proving the existence and extent of the agency. Irving Leasing Corp. v. M H Tire Co. (1984),16 Ohio App.3d 191, 195. There must be corroborating evidence beyond the mere assertion of an agency relationship. Toms v. Delta Sav. LoanAssn. (1955), 162 Ohio St. 513.
 {¶ 79} No underlying facts were set out to explain or support Paragraph Eleven of Kevin's affidavit, either as creating an agency relationship or a contractual relationship for reimbursement. Thus, this statement did not create a material issue of fact.
 {¶ 80} Paragraph Twelve of Kevin's affidavit states, "Affiant's authorization to lease the truck on behalf of Able/SS came directly from the directors." Again, Kevin offered no operative evidence or details of this creation of agency or creation of a contract for reimbursement. Thus, there is no material issue of fact created by this statement for the same reasons which applied to Paragraph Eleven.
 {¶ 81} Paragraph Thirteen states "Affiant's authorization to lease the truck on behalf of Able/SS also came from the authority of his position as an officer of the corporation." First, we note that this theory of agency is incompatible with the proceeding theory. Next, under the established facts of this case, Kevin admitted that the repossession action only involved him. Kevin further admitted that he was found to be liable for the $6,533 deficiency owed to National City. Without proper corporate authority, a corporate officer cannot negotiate and enter a truck lease in his individual name, but have it paid for by the corporation. Such an act constitutes an apparent breach of fiduciary duty by the corporate officer. To legitimately engage in such activity without incurring a breach of fiduciary duty, there would have to be an appropriate resolution by a majority of disinterested directors for the officer to proceed. R.C. 1701.60(A)(1)(a). To demonstrate his authority to enter into this contract as a corporate officer, Kevin had to present some evidence on this point beyond his own conclusory statement.
 {¶ 82} On the other hand, appellees produced corporate documentation, which on its face, demonstrated an existing, on-going corporation. This documentation included no evidence that Kevin was ever elected or appointed the corporate secretary, that Able had abandoned its corporate status, or that there was any such resolution approving Kevin's actions. Kevin cannot create a material issue of fact as to whether he was the corporate secretary, that the corporate status was abandoned, or that there was an authorizing resolution without stating or producing evidence of the operative facts.
 {¶ 83} We further note that Kevin submitted an incomplete copy of the lease agreement with National City to his October 29, 1999 counterclaim and third party complaint. Specifically, the top portion of the first page was missing; thus, this document failed to show in whose name the lease was issued. Nevertheless, the page of the lease which was submitted showed two significant items: first, Kevin checked a box showing that the lease was for personal use and not commercial use; second, Kevin signed both personally and with the designation "Secty" [sic] after his name. However, there is no identification of the principal for which he claimed to be the "Secty." [sic]
 {¶ 84} "Where a contract is made in furtherance of the interests of an undisclosed principal, both the principal and the agent are liable for breach of its underlying obligation." Illinois Controls, Inc. v.Langham (1994), 70 Ohio St.3d 512, 524. Kevin has made no such showing to attach liability to appellees. Moreover, "[i]t is an elemental principle of agency law that in order to preclude personal liability, an agent must disclose not only his principal, but also the agency relationship."Sommer v. French (1996), 115 Ohio App.3d 101, 103-104. Thus, the notation of "Secty" at best, can only be construed to be some evidence that Kevin thought he was the secretary of some unnamed company.
 {¶ 85} Kevin also claimed in his counterclaim that Able made payments under the lease. However, no evidence was offered of the elements of the alleged reimbursement contract under which these payments were made. Thus, they could have been gratuitous, they might have been a company benefit for as long as Kevin was with the company, or they might have been, as Kevin apparently claims, for the life of the lease regardless of his employment status. Without a specific statement of the essential terms of this alleged contract, no material issue of fact has been established.
 {¶ 86} At this juncture, appellees' claim of a statute of fraud issue becomes viable if it had been properly framed. If the payments made to Kevin or on Kevin's behalf were to last for the life of the lease, apparently several years, there had to be a writing between Kevin and Able, as the lease exceeded one year. R.C. 1335.05; ZBS Industries, Inc.v. Anthony Cocca Videoland, Inc. (1994), 93 Ohio App.3d 101, 105. Regardless, Kevin's affidavit simply did not assert a contractual reason as to why Able made payments, if it did. Thus, no material issue of fact is created by the claimed payment of the lease prior to Kevin's dismissal.
 {¶ 87} In summation, we reject Kevin's claim that material issues of fact exist as to whether the debt to National City was a debt of appellees; that Kevin was an agent with an undisclosed principal; or, that appellees were obligated by contract to reimburse Kevin.
 {¶ 88} The third issue presented for our review concerns Kevin's claim that Mr. Syracuse fraudulently misrepresented to him that he would not need to look for work through the summer.[7] According to Kevin, an issue of material fact exists as to whether his claim of not looking for other unspecified employment constitutes injury.
 {¶ 89} To demonstrate a claim for fraudulent misrepresentation, all of the following elements must be shown:
 {¶ 90} "'(a) a representation or, where there is a duty to disclose, Gaines v. Pre-term Cleveland, Inc. (1987), 33 Ohio St.3d 54, 55; see, also, Eiland v. Coldwell Banker Hunter Realty (1997), 122 Ohio App.3d 446, 457." Morgan v. Mazza Real Estate (Aug. 4, 2000), 11th Dist. No. 99-T-0103, unreported, 2000 WL 1114819, at 3.
 {¶ 91} As explained earlier in this opinion, Kevin failed to demonstrate the requisite detrimental reliance. No promise was made, so there was no reasonable inference to be drawn. See, e.g., Blank v. Securx, Inc. (Sept. 18, 1997), 8th Dist. Nos. 71661, 71628, and 71667, 1997 WL 578919, at 4. Moreover, there is no evidence that Mr. Syracuse stated Kevin should refrain from seeking employment elsewhere. Accordingly, Kevin failed to support his claim of fraudulent misrepresentation.
 {¶ 92} We agree that the result in this case appears to be harsh, if Kevin's claims are true. However, when a plaintiff's claims are put to the test in a summary judgment exercise, the legal sufficiency of the respective submissions are the only issue. Essentially, appellant failed to offer anything other than his legal conclusions concerning the facts of this case. Those conclusions were unsupported, and as a result, fail. Kevin's lone assignment or error, therefore, is without merit.
 {¶ 93} Having disposed of the arguments raised by Kevin, we now turn to the events surrounding Eugene's appeal. As mentioned earlier in this opinion, Eugene was also employed by Able. During his tenure, Eugene claimed to be the treasurer of the corporation and alleged he was given authority to invest the corporation's money in Midwest Web, Inc., an Internet service provider ("ISP").
 {¶ 94} In pertinent part to this appeal, on February 10, 2000, Eugene filed an amended answer to Able's complaint in conjunction with a counterclaim, advancing four causes of action relevant to this appeal. First, Eugene claimed that after he became an investor in Able in 1991, Able committed fraud in 1994. Specifically, Eugene stated "[Able's] accounting books were `adjusted' to change a loss of approximately [$290,000] into a gain of [$92,928] * * * in order to allow Able to be awarded construction contracts." According to Eugene, Mr. Richards and Mr. Syracuse, adjusted the corporate books without his knowledge with the intent of gaining employment and bonding that the corporation would not otherwise be awarded. Eugene also claimed that had he known of Able's weakened financial condition, he would not have continued his relationship with the corporation.
 {¶ 95} Second, Eugene alleged that Able issued pro forma statements in 1991 that contained a false investment of $240,000, which caused the corporation to bolster its financial condition. As such, Eugene claimed that Able defrauded him by using the false pro forma financial statements to induce him into justifiably relying on the statements, causing him to suffer a loss of $100,000.
 {¶ 96} Third, Eugene maintained that "[he] was given authority to take action on behalf of [Able] to engage [the corporation] in new areas of potential business." As such, Eugene claimed that he "engaged the company on a new endeavor of owning an Internet Service Provider (ISP)." However, Able allegedly "revoked [Eugene's] authority for such a venture after substantial money had been invested in reliance with the authority with which [Able] had given [him]." According to Eugene, after "[he] hadinvested substantial personal funds in conjunction to [Able's] funds into the [ISP] project[,]" Able required him to "return the money invested in the ISP and, in affect [sic], forced a sale of [Eugene's] interest in the ISP venture." (Emphasis added.)
 {¶ 97} Fourth, Eugene claimed that he was wrongfully terminated without notice or cause, and that Able did not follow proper corporate procedure in terminating him by failing to vote on his removal.[8]
 {¶ 98} Additionally, on February 10, 2000, Eugene filed a third party complaint against Mr. Syracuse and Mr. Richards, maintaining three causes of action that are relevant to this appeal. First, Eugene realleged that Mr. Syracuse and Mr. Richards committed fraud against him "when they fraudulently altered the financial statement of Able * * * in 1991 to reflect non-existent income of [$240,000]." According to Eugene, he justifiably relied on the fraudulent financial statements when he invested in Able, causing him to suffer a financial loss in excess of $100,000.
 {¶ 99} Second, Eugene realleged that Mr. Richards and Mr. Syracuse committed fraud in 1994 "when they adjusted the accounting statements of [Able] to change a loss of [$290,000] into a gain of [$92,928,]" causing Eugene to suffer a financial loss in excess of $100,000. To his detriment, Eugene claimed that he continued his involvement with appellees, unaware of the fraud committed thereto.
 {¶ 100} Third, Eugene alleged that Mr. Richards and Mr. Syracuse misappropriated and converted the resources of Able by transferring its assets to SS Construction Company ("SS Construction") without compensation.[9]
 {¶ 101} Subsequently, on April 6, 2000, appellees filed a motion for summary judgment as to Eugene's counterclaim and as to the fraud and conversion claims contained in the third party complaint. Therein, appellees contended, inter alia, that Eugene's claim for fraud based on false adjustments of accounting statements to change a loss of $290,000 into a gain of $92,928 failed because Eugene could not maintain an action for fraud based upon a misrepresentation intended to cause a third party to act. Appellees also pointed out that Eugene's investment in Able was made in 1993 while the alleged false financial statements were made in 1994. From this, appellees concluded that there was no evidence suggesting that Eugene relied upon the alleged false financial statements to induce him into investing in the corporation because he became an investor prior to the time the false adjustments were allegedly made.
 {¶ 102} As to Eugene's claim that pro forma statements allegedly contained a false investment of $240,000, appellees asserted that this claim was not brought within the four year statute of limitations period set forth in R.C. 2305.09(C). Appellees also argued that there was no evidence that Eugene justifiably relied on the 1991 pro forma statement, or that Mr. Syracuse and/or Mr. Richards altered the corporation's financial statement.
 {¶ 103} With respect to the alleged wrongful revocation of Eugene's authority to invest the funds of Able into Midwest Web, Inc., appellees maintained that Eugene's deposition testimony indicated that Able was never an investor in Midwest Web, Inc. Appellees further claimed that Eugene's wrongful discharge action failed because he admitted in his deposition testimony that he resigned from his position. As to the conversion claim, appellees argued that no property of Able was ever converted to or co-mingled with SS Construction.
 {¶ 104} To support their motion for summary judgment, appellees submitted, inter alia, the affidavit of Mr. Richards, articles of incorporation, code of regulations, share journal and stock certificates. Also unfiled and uncertified portions of Eugene's deposition testimony were submitted without objection as to their form or substance. As such, this deposition could be considered or not at the discretion of the trial court. Trimble-Weber at 12, fn. 2; Al-Najjar at 2, fn. 1. A review of the trial court's judgment entry indicates that the court apparently reviewed and considered this deposition.
 {¶ 105} On June 2, 2000, Eugene filed a brief in opposition to appellees' motion for summary judgment and submitted his affidavit and a copy of a share journal in support thereof.[10]
 {¶ 106} With respect to the fraud claims, Eugene asserted that appellees' fraudulently prepared statements for the purpose of inducing him to invest money in the corporation. As to the wrongful revocation of his authority to invest funds of Able, Eugene explained that Able did invest in Midwest Web, Inc. in the form of loans. Eugene further claimed that at the time of his termination, he was not receiving a paycheck as an officer, nor receiving any distribution as an owner. According to Eugene, he was discharged contrary to the corporation's procedure and without cause. Finally, Eugene maintained that issues of fact existed as to whether Able's assets were being converted.
 {¶ 107} Upon consideration, the trial court issued a judgment entry on September 1, 2000, granting appellees' motion for summary judgment as to the above-mentioned claims. It is from this judgment Eugene appeals, advancing a single assignment of error and reiterating the arguments set forth in his brief in opposition to appellees' motion for summary judgment.
 {¶ 108} First, Eugene argues that a question of fact remains as to what statements were falsified and whether false financial statements were made to induce him to invest.
 {¶ 109} The elements of fraud are:
 {¶ 110} "(a) [A] representation or, where there is a duty to disclose, concealment of a fact,
 {¶ 111} (b) which is material to the transaction at hand,
 {¶ 112} (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,
 {¶ 113} (d) with the intent of misleading another into relying upon it,
 {¶ 114} (e) justifiable reliance upon the representation or concealment, and
 {¶ 115} (f) a resulting injury proximately caused by the reliance." Burr v. Stark Cty. Bd. of Commrs.
(1986), 23 Ohio St.3d 69, paragraph two of the syllabus.
 {¶ 116} In the instant matter, Eugene did not set forth any evidence tending to show that Mr. Syracuse and/or Mr. Richards altered Able's financial statements to support his allegation in his affidavit that they had misrepresented the value of the company. Rather, Eugene makes the conclusory statement in his affidavit that Mr. Syracuse and Mr. Richards misrepresented the value of the company. "[A]ffidavits submitted in a summary judgment exercise must contain more than conclusory statements. Affidavits must also contain a recitation of the operative facts which give rise to such a conclusory statement."Burkeholder v. Straughn (June 26, 1998), 11th Dist. No. 97-T-0146, 1998 WL 553623, at 4. Thus, the conclusory statement contained in Eugene's affidavit is inadequate to oppose summary judgment.
 {¶ 117} In an attempt to excuse his failure to provide any documentation to support his position that financial information was falsified by appellees, Eugene suggests that "the discovery has not been completed upon appellee [sic] in order to obtain a copy of the falsified financial statements." As to this point, Eugene stated the following in his brief in opposition to appellees' motion for summary judgment:
 {¶ 118} "[T]he discovery process has not been completed. The information requested of [appellees] has not been received by [Eugene]. The parties are currently trying to find a suitable time for [Eugene] to view the discoverable material."
 {¶ 119} "* * *
 {¶ 120} "It is imperative that the discovery process be complete for the court to make a determination as to whether genuine issues of fact exist. In the present case, [Eugene] attorney the under signed has been unable to view the documents requested. Plaintiff and new party defendants [sic] [appellees] counsel have limited the availability of the requested discovery to the hours during which he is available under his schedule to oversee the inspection of corporate documents. This coupled with the recent surgery of [Eugene's] counsel have limited [his] ability to include documentary evidence, which is in [appellees'] counsels [sic] possession, to demonstrate the existence of material issues of fact."
 {¶ 121} Civ.R. 56(F) dictates that "[i]f the nonmoving party has not had sufficient opportunity to discover the relevant facts necessary to meet his reciprocal burden, he may rely upon Civ.R. 56(F) to obtain more time to do so." King v. Zell (Dec. 31, 1998), 11th Dist. No. 97-T-0186, 1998 WL 964541, at 3. Civ.R. 56(F) reads, in pertinent part:
 {¶ 122} "Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just."
 {¶ 123} Accordingly, upon a motion by the nonmoving party, "Civ.R. 56(F) authorizes the trial court to delay a decision on a summary judgment motion while the nonmoving party has additional time to gather rebuttal evidence." King at 3. "In determining whether such additional time is appropriate, the trial court should, as a general rule, exercise its discretion in favor of the nonmoving party to give him more time to discover facts necessary to rebut the motion for summary judgment."King at 3.
 {¶ 124} In the instant matter, on April 6, 2000, Kevin filed a motion for leave to respond to appellees' motion for summary judgment. Kevin's counsel requested a fourteen day extension, or until April 21, 2000, "due to an extremely heavy case load * * *." Clearly, the extension requested by Kevin was not for discovery purposes. Ultimately, Kevin filed his motion in opposition to summary judgment on April 28, 2000.
 {¶ 125} Hence, there is no indication from Kevin's April 6, 2000 motion for leave that he was seeking to delay the summary judgment proceedings on the basis that he was having difficulty conducting or gathering discovery material. As such, Kevin cannot now complain that the lack of discovery prevented him from obtaining additional information to survive summary judgment.
 {¶ 126} As for Eugene, he filed three separate motions for leave to respond to the motion for summary judgment on April 19, May 8, and May 17, 2000. Therein, Eugene claimed that "in response to Defendant Eugene Canfield's Request for Production of Documents, plaintiffs responded that the records would be made available for the parties to view at the office of plaintiffs' attorney. To date, an agreeable time has not been arranged for the parties to view the documents and without the benefit of discovery, counsel for Eugene Canfield has not be able to prepare a response to the Motion for Summary Judgment." (Emphasis added.) According to the motions, Eugene's counsel's unusually heavy schedule and subsequent knee surgery caused the delay in arranging a time to view the discovery material.
 {¶ 127} In each instance, the trial court granted Eugene's request for a fourteen-day extension. On May 22, 2000, the trial court granted Eugene's third motion for leave to respond to the motion for summary judgment until June 2, 2000, indicating that no further leave would be granted.
 {¶ 128} We do not expect the trial court to carry this matter on its docket indefinitely. Here, the trial court granted Eugene three separate extensions to respond to appellees' motion for summary judgment. Even after obtaining these extensions and being advised that no further extensions would be granted, Eugene's counsel was still unable to schedule a time to view the discovery material, which he admitted was made available by appellees at their counsel's office. In other words, this is not a situation where discovery material was unavailable to Eugene. Under these particular facts, the trial court did not abuse its discretion in refusing to grant Eugene further extensions.
 {¶ 129} In the second issue presented for review by Eugene, he submits that an issue of material fact exists as to whether his authority to invest moneys on behalf of Able was revoked. According to Eugene, he was authorized to invest Able's money and "[b]y revoking the authority and demanding return of the investment from Midwest Web, Inc., Able destroyed Eugene Canfield's investment. The allegations show that Able [sic] moneys [sic] were invested in Internet Service Providers as authorized." (Emphasis added.)
 {¶ 130} While Eugene claimed to be the treasurer of the corporation, he presented no evidence tending to show that he was authorized to invest Able's funds in Midwest Web, Inc.[11]
Eugene's claim is further unsubstantiated by the fact that during his deposition, Eugene testified that the corporation's funds were not
invested in Midwest Web, Inc.:
 {¶ 131} "Q. To your knowledge was Able/SS ever a shareholder of Midwest Web?
 {¶ 132} "A. I don't believe that it was.
 {¶ 133} "* * *
 {¶ 134} "Q. You mentioned in your suit that you were authorized by [Mr. Richards and Mr. Syracuse] to cause Able/SS to invest in Midwest Web; is that accurate?
 {¶ 135} "A. No.
 {¶ 136} "* * *
 {¶ 137} "Q. Okay. Well, did Able/SS invest in Midwest Web?
 {¶ 138} "A. No." (Emphasis added.)
 {¶ 139} In light of the foregoing, we conclude that the trial court properly granted appellees' motion for summary judgment as it pertains to this claim.
 {¶ 140} In the third issue, Eugene maintains that issues of material fact exist surrounding his "wrongful discharge" claim. According to Eugene, he "resigned from the company in which he had an ownership interest." However, prior to his resignation, Eugene claims that he had been terminated as an employee by Mr. Richards and Mr. Syracuse "effectively starving him out of the company" because he "had received no compensation for his efforts for the work performed."
 {¶ 141} According to the trial court's judgment entry, a review of Eugene's deposition testimony indicates that he decided to terminate his employment with Able:
 {¶ 142} "Q. And did there come a time when you ceased receiving a paycheck from Able/SS, Incorporated?
 {¶ 143} "A. Yes.
 {¶ 144} "Q. And when was that?
 {¶ 145} "A. I believe it was at the end of 1998.
 {¶ 146} "Q. And since the end of 1998 then who have you been employed by?
 {¶ 147} "A. I was not employed by anyone until July of last year.
 {¶ 148} "Q. So from December approximately of 1998 until July of 1999, you were unemployed?
 {¶ 149} "A. No, I — I can't say I was unemployed. I spent my time trying to secure work for Able/SS and then for SS Construction Company.
 {¶ 150} "Q. And what happened in July of 1999?
 {¶ 151} "A. Well, I suggested that since I had no money, that they begin to pay me for the services and the decision was not to pay me for the services.
 {¶ 152} "Q. You made that suggestion to who?
 {¶ 153} "A. Dave Richards and Sam Syracuse.
 {¶ 154} "Q. And this was in or about July of 1999?
 {¶ 155} "A. I think that's the approximate date.
 {¶ 156} "Q. Okay. Now, if I understand your testimony correctly then, you went for a period of time, the first six months of 1999, without getting a paycheck and then you had a discussion with Dave Richards and Sam Syracuse in July of 1999 about the fact that you needed to get a paycheck; is that what you're saying?
 {¶ 157} "A. That's what I said.
 {¶ 158} "Q. And then they declined to pay you so at that time you — what happened; you terminated your employment?
 {¶ 159} "A. Yes, I had — I had to seek income.
 {¶ 160} "Q. You resigned?
 {¶ 161} "A. No, I had resigned the position I had before in the January proceeding.
 {¶ 162} "Q. So you really weren't an employee of the company at that point; you resigned as of sometime prior to that?
 {¶ 163} "A. I resigned as an officer and continued to use my time in an attempt to secure work for Able/SS and for SS.
 {¶ 164} "Q. Was it your testimony that you resigned your officership for the company; is that what you indicated?
 {¶ 165} "A. That's what I said."
 {¶ 166} In light of the foregoing testimony, the trial court determined that Eugene's claim for wrongful discharge was defeated because he chose to leave his employment.
 {¶ 167} While appellant attempts to present the issue on appeal as a wrongful discharge claim, we view it as being a claim for breach of employment contract; that is, appellant alleges that certain corporate procedures should have been followed before he was terminated. However, there is no evidence in the record to show that Eugene was more than an at-will-employee. For instance, Eugene has not alleged that an exception to his at-will status existed, such as a violation of public policy, promissory estoppel, or express/implied contract. Greeley v. Miami ValleyMaintenance Contrs., Inc. (1990), 49 Ohio St.3d 228, paragraphs one, two, and three of the syllabus; Mers at 103-104. Moreover, in order to receive compensation for the services Eugene allegedly rendered to Able, Eugene should have brought an action for quantum meruit, which he failed to do. In either event, the trial court properly granted summary judgment in favor of appellees as to this claim.
 {¶ 168} As to the final issue, Eugene submits that an issue of material fact exists as to the wrongful conversion of Able's property sufficient to survive summary judgment. According to him, his affidavit shows that the property of Able, to wit: equipment, was wrongfully transferred to SS Construction causing Able to be unable to perform construction work.[12]
 {¶ 169} "[C]onversion is the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." Joycev. General Motors Corp. (1990), 49 Ohio St.3d 93, 96.
 {¶ 170} As to this point, Eugene stated the following in his brief in opposition to appellees' motion for summary judgment:
 {¶ 171} "At trial it will be shown that
defendant, Eugene Canfield[,] was bidding work for Able/SS. Defendant also bid work for SS Construction as late as July of 1999. It is within the personal knowledge of defendant, Eugene Canfield, that Able/SS is unable to obtain pre-qualification from the Ohio Department of Transportation in order to bid work. The equipment of Able/SS is being used by SS Construction in the absence of Able/SS ability to obtain their own construction contracts. The assets of Able/SS have been converted to those of SS Construction due to the fact that Able/SS can not perform their own construction projects. Therefore, the plaintiff and third party defendants [sic] summary judgment must fail." (Emphasis added.)
 {¶ 172} It is evident from the record that Eugene failed to submit any evidence supporting the claims made in his brief that the property of Able was being converted to SS Construction. As no issue of material fact exists, it was appropriate for the trial court to grant summary judgment as to this claim.
 {¶ 173} Based on the foregoing analysis, the issues contained in Kevin and Eugene's lone assignment of error are meritless. Accordingly, the judgment of the trial court is affirmed.
WILLIAM M. O'NEILL, P.J., ROBERT A. NADER, J., concur.
[1] During his deposition testimony, Kevin admitted that he did not have a written employment contract with Able:
 "Q. Now, while you were employed at Able SS, Kevin, you did not have any form of written employment agreement; is that correct?
"A. That's correct."
[2] The inconsistency as to whether Kevin was promised employment "through the summer" or "through the year" will be discussed later in this opinion.
[3] Kevin also maintained that upon his termination, Able did not pay him his last wages, in violation of R.C. 4113.19 and 4113.15. The disposition of this claim, however, is not an issue on appeal.
[4] Kevin also alleged in his third party complaint that Mr. Richards and Mr. Syracuse were not entitled to protections from personal liability afforded corporations and instead should be individually liable for injuries caused by Able. This claim, however, is not an issue in the instant appeal.
[5] Appellees filed a reply brief on May 4, 2000.
[6] This particular judgment entry only disposed of various claims contained in appellants' counterclaim and third party complaint. Even though less than all of the claims have been resolved, the trial court added the requisite Civ.R. 54(B) language, finding that there was no just reason for delay, thereby making the September 1, 2000 judgment entry a final appealable order.
[7] Again, we are troubled by the fact that this statement is in direct conflict with the statement contained in Kevin's third party complaint: "Kevin Canfield, relied upon the representation of Sam Syracuse that he would be employed for one (1) year and was terminated in July of 1999." (Emphasis added.) Furthermore, during his deposition, Kevin mentioned a vague time period of "middle of the year." As explained earlier in this opinion, the confusion was caused only by Kevin as to whether he was to be employed through the summer, for one year, or until the middle of the year. Thus, it does not create a factual issue. Spatar, supra; Barile at 7.
[8] Eugene also alleged that the shareholders were not entitled to the protections of the corporate form and should be held personally liable for all claims against the corporation. This claim, however, is not an issue on appeal.
[9] Eugene also contended that Mr. Richards and Mr. Syracuse made defamatory statements pertaining to his business reputation as well as allegations of thefts. Again, this claim is not an issue on appeal.
[10] Appellees filed a reply brief on June 9, 2000.
[11] Pursuant to the corporation's code of regulations, the duties of a treasurer are as follows: "The Treasurer shall have the custody of the funds and securities of the corporation which may come into his hands and shall do with the same as may be ordered by the Board of Directors. When necessary or proper he may endorse for collection on behalf of the corporation, checks, notes and other obligations. He shall deposit the funds of the corporation to its credit in such banks and depositaries as The Board of Directors may from time to time designate. He shall submit to the annual meeting of the shareholders a statement of the financial condition of the corporation. He shall keep and maintain in the books of the corporation full and accurate accounts of all moneys received and disbursed for and on account of the corporation, and shall, whenever required, by the Board of Directors make and render a statement of his accounts and such other statements as may be required."
[12] Eugene seems to have standing to assert the conversion claim as he was a shareholder in the corporation.