SOMMER, Appellant,

v.

FRENCH, Appellee.

[Cite as *Sommer v. French* (1996), 115 Ohio App.3d 101.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

No. 96CA006338.

Decided Oct. 2, 1996.

**102**

*Patrick Riley*, for appellant.

*Richard H. French, Jr., Gary B. Pearch* and *Carl F. Noll*, for appellee.

SLABY, Judge.

Donald A. Sommer appeals from the Lorain County Court of Common Pleas' entry of summary judgment in favor of attorney Richard French. We reverse.

Attorney French was hired by Mrs. Nancy Imhof and her sister-in-law, Mrs. Fern Sowers, to represent them in a wrongful death and products liability action resulting from an airplane crash that occurred in Lorain County, Ohio. Four days after the airplane accident, in which Imhof's husband perished, the attorney had sent a letter to her listing his credentials, explaining his expertise in aviation litigation, and suggesting that he might be of service to her and her family.[1]

As part of his representation, the attorney hired Donald Sommer as an expert to investigate the crash as well as to testify concerning his findings. The attorney had contacted the expert by telephone, explaining the case and what services would be necessary. After the phone conversation, and at the attorney's request, the expert sent the attorney his rate schedule for fees. Attorney French then sent the expert a letter verifying their discussion, and providing documents that the letter instructed the expert to review in anticipation of trial. The letter was signed in French's own name; payment was not mentioned. However, along with the letter and case materials, attorney French sent a check for $1,500 as a

---

1. Apparently, the attorney also represented the estate of another person killed in the accident, but the record does not reveal how this relationship was initiated or the extent of it.

retainer against the expert's fees. The expert performed as promised, rendering services in excess of $18,000, but was never fully paid for those services.[2]

The expert sued the attorney for breach of contract in the trial court, seeking payment for the remainder of the fee still owed. The attorney denied these allegations and subsequently filed two summary judgment motions, arguing that his former clients, Imhof and Sowers, were the responsible parties. He also filed a complaint against his former clients, as well as against his former cocounsel in the air-crash litigation, naming them as third-party defendants. The expert responded in opposition to the motions, and the attorney replied to the expert's opposition. Upon review of the evidence and arguments presented, the trial court granted the attorney summary judgment on agency grounds and dismissed the entire case. The expert appeals, assigning one error:

"The trial court erred by granting summary judgment in favor of [the attorney] as genuine issues of material fact exist in the case and [the attorney] was not entitled to judgment as a matter of law."

The expert claims that there are material facts in dispute requiring a trial. We agree, because the parties disagree as to whether, upon entering the agreement, the attorney told the expert that he would not be paying for the expert's services.

In reviewing a trial court's entry of summary judgment, an appellate court applies the same standard used by the trial court. *Parenti v. Goodyear Tire & Rubber Co.* (1990), 66 Ohio App.3d 826, 829, 586 N.E.2d 1121, 1122. Pursuant to Civ.R. 56(C), summary judgment shall be granted only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *State ex. rel. Howard v. Ferreri* (1994), 70 Ohio St.3d 587, 589, 639 N.E.2d 1189, 1192–1193; see, also, *McConville v. Jackson Comfort Sys., Inc.* (1994), 95 Ohio App.3d 297, 301, 642 N.E.2d 416, 419. The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267. The evidence being viewed from this perspective, it must appear that reasonable minds can come to but one conclusion, which is adverse to the nonmoving party. *Id.* If not, summary judgment is inappropriate.

It is an elemental principle of agency law that in order to preclude personal liability, an agent must disclose not only his principal, but also the

---

2. The exact balance owed to the expert is in dispute; attorney French claims that the amount is $12,840.10 and the expert claims it is $14,318.57. It appears that after demanding payment from the attorney, the expert sought to secure the debt from the attorney's former clients (at the attorney's suggestion). Attorney French has supposedly paid the expert a total of $4,084 to date.

agency relationship. *Dunn v. Westlake* (1991), 61 Ohio St.3d 102, 106, 573 N.E.2d 84, 87; see, also, *Givner v. United States Hoffman Machinery Corp.* (1935), 49 Ohio App. 410, 413, 197 N.E. 354, 356.

What constitutes disclosure of an agency relationship was at issue in *Mark Peterson Dental Laboratory, Inc. v. Kral* (1983), 9 Ohio App.3d 163, 9 OBR 228, 458 N.E.2d 1290. In that case, a dentist and agent of a corporation that provided dental services were held individually liable for the debt incurred as a result of certain laboratory work. While the laboratory knew of the corporation and its relationship with the dentist and in fact was paid by it alone for other services, the dentist had never told the laboratory that the corporation would be exclusively responsible for the bills. Moreover, the work authorization forms that had been submitted in the dentist's own name did not evidence such a payment agreement. Therefore, the trial court found, and we agreed, that the dentist had not affirmatively disclosed his agency status concerning payment for the particular services at issue in the lawsuit. *Id.* at 164, 9 OBR at 229–230, 458 N.E.2d at 1292.

We applied this rule of agent liability to an agreement for legal services in *Blake v. Ingraham* (1989), 44 Ohio App.3d 38, 540 N.E.2d 759. In *Blake*, we held an attorney responsible for failing to disclose his agency status regarding the payment for stenographic services he had ordered in his own name from a court reporter, concluding as follows:

"We consider it equitable that, in the absence of an express agreement to the contrary, court officials and persons connected with the progress of the litigation may safely regard themselves as dealing with the attorney." *Id.* at 39, 540 N.E.2d at 760, citing *Gaines Reporting Service v. Mack* (1982), 4 Ohio App.3d 234, 4 OBR 424, 447 N.E.2d 1317.

Other appellate districts have also adopted this standard of express agreement for attorney disclosure and have specifically applied it to the payment of expert witnesses. See, *e.g.*, *Allen v. Donlin* (Feb. 16, 1996), Trumbull App. No. 95–T–5194, unreported, 1996 WL 206784; *Foster & Assoc., Inc. v. La Cour* (June 9, 1994), Franklin App. No. 93APG10–1408, unreported, 1994 WL 258381. The express-agreement rule is predicated on the obvious fact that mere knowledge that an attorney is representing a client hardly constitutes notice that payment must be secured only from the attorney's client. See *Allen v. Donlin, supra.*

Attorney French feels we should disregard precedent because otherwise he would be branded unethical pursuant to DR–5–103(B), which provides:

"While representing a client in connection with contemplated or pending litigation, a lawyer shall not advance or guarantee financial assistance to his client, *except that a lawyer may advance or guarantee the expenses of litigation,*

including * * * costs of obtaining and presenting evidence, provided the client remains ultimately liable for such expenses." (Emphasis added.)

Because this rule explicitly states that an attorney may guarantee payment, we disagree with the attorney's position and see no conflict which would force him, or any lawyer, to face an ethical dilemma. Accord *Allen v. Donlin, supra.* Besides, "[i]t would be rather incongruous if the Disciplinary Rules could be used by an attorney to disadvantage a third-party who had dealt with that attorney in good faith." *Id.* Furthermore, we think it only fair that an attorney with superior legal knowledge and who actively seeks another's services in connection with litigation bear the burden of clarifying his intent regarding payment.

■ In the case *sub judice*, the expert knew of the attorney's clients and admitted as much in his deposition. The expert contends, however, that the attorney never specified at the time of contracting that it would be necessary to rely solely on the parties to the lawsuit for payment, parties whom the expert had not even met. The expert explains that only after he sent the attorney his bill did the attorney protest responsibility for the debt. In contrast, the attorney states in his affidavit that he "never agreed to be responsible for the fees, costs, or expenses billed" by the expert. He insists that he made it clear in his dealings with the expert that his former clients were paying, and that he was not.

■ The attorney also relies on the contingency fee arrangement with his former clients, which required them to pay any expert fees, as proof that he never intended financial responsibility. While this may be true, it is irrelevant. It is not attorney French's subjective intent that matters in ascertaining his liability, but how his belief was objectively manifested to the expert.[3] See 3 Ohio Jurisprudence 3d (1978) 201, Agency, Section 130; see, also, *Dunn v. Westlake,* 61 Ohio St.3d at 106, 573 N.E.2d at 87; *Givner v. United States Hoffman Machinery Corp.,* 49 Ohio App. at 413, 197 N.E. at 356. As indicated above, the answer to that question has yet to be determined.

Accordingly, there is a dispute of fact that could affect the outcome of this case, and a trial is required to discern exactly what was said and agreed to between the attorney and the expert upon entering into their agreement, especially in their phone conversation.[4] The expert's assignment of error is well taken.

---

3. The attorney does not assert that the expert knew about the financial details between himself and his former clients, and, in any event, the expert denies any such knowledge. Even if the expert did know that the attorney's former clients promised to be ultimately responsible for the expert's services, such knowledge does not necessarily mean that the attorney was not also a part to the expert's contract.

4. The content of the telephone conversation may also be important to determine the applicability of the parol evidence rule; specifically, these facts may bear on whether the attorney's

106

The judgment of the trial court is reversed, and the cause remanded for proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

QUILLIN, P.J., and DICKINSON, J., concur.

letter embodied the parties' clear and complete agreement. If so, any previous disclaimers by the attorney would not help him escape liability. See, generally, 3 Ohio Jurisprudence 3d (1978) Agency, Sections 134 and 191; Corbin, The Parol Evidence Rule (1944), 53 Yale L.J. 603.