[Cite as *Quitifan v. Shafiq*, 2016-Ohio-4555.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Jamal Qutifan et al., | : | |
| Plaintiffs-Appellants, | : | |
| | | No. 15AP-814 |
| v. | : | (C.P.C. No. 13CV-5257) |
| Mohammad Shafiq et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on June 23, 2016

**On brief:** *Stephen A. Moyer*, for appellants. **Argued:** *Stephen A. Moyer.*

**On brief:** *Wright & Noble, LLC,* and *Scott E. Wright,* for appellees Ranjit Takhar, Rachpal Takhar, R&R Takhar Oil Company, Inc., and R&A Corporation. **Argued:** *Scott E. Wright.*

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} Jamal Qutifan ("Jamal"), J.S.T. LLC of Ohio ("J.S.T."), U.B.H. LLC, and Khalil Qutifan ("Khalil"), plaintiffs-appellants, appeal from the judgment of the Franklin County Court of Common Pleas, in which the court granted summary judgment to R&A Corporation ("R&A"), R&R Takhar Oil Co., Inc. ("R&R"), Ranjit Takhar ("Ranjit") and Rachpal Takhar ("Rachpal"), defendants-appellees, denied Khalil's motion for summary judgment, and denied summary judgment filed by Mohammad Shafiq ("Shafiq") defendant.

{¶ 2} In 2011, Jamal, through his company J.S.T., leased and managed a Fuel America gas station and convenience store. Ranjit and Rachpal, who are brothers, owned

R&A and R&R. R&A is a business that purchases gas stations and convenience stores. R&R is a wholesale gasoline distributor.

{¶ 3} The owner of the gas station that Jamal leased and managed went into receivership. Jamal and his father, Khalil, approached Ranjit and Rachpal and proposed that if Ranjit and Rachpal purchased the Fuel America station, they would then purchase the gas station from Ranjit and Rachpal.

{¶ 4} Appellees drafted an agreement entitled "INTENT TO PURCHASE" ("the agreement"), which provided the following:

> THIS IS A LETTER OF INTENT TO PURCHASE THE BUSINESS KNOWN AS FUEL AMERICA, 2676 CLEVELAND AVE, COLUMBUS, OHIO. THE PURCHASE PRICE IS $270,000.00 PLUS ALL COSTS ASSOCIATED WITH BRIGNGING THE LOCATION TO MEET BUSTR [BUREAU OF UNDERGROUND STORAGE TANK REGULATIONS] STANDARDS, PLUS ANY OTHER REASONABLE COSTS INVOLVED IN BUYING THIS PROPERTY, PLUS A PROFIT OF $25,000.00 TO R&R TAKHAR OR IT'S AFFILIATED COMPANY. THE CLOSING WILL BE WITHIN THIRTY DAYS AFTER R&R PURCHASES IT FROM RECEIVER. THE BUYER IS PUTTING DOWN A UNREFUNDABLE DEPOSIT OF $_____$5,000.00_____. THE PROPERTY WILL BE SOLD TO KHALIL A QUTIFAN ON THE SAME CONDITION AS THE SELLER IS BUYING FROM RECEIVER. IF R&R TAKHAR OR IT'S AFFILIATED COMPANIES DO NOT BUY THE PROPERTY FOR ANY REASON THEN THE $5,000.00 WILL BE REFUNDED BACK TO THE BUYER. THE BUYER WILL ALSO BE REQUIRED TO SIGN A FUEL SUPPLY AGREEMENT WITH R&R TAKHAR OIL COMPANY, INC.

(Sic passim; Pl.'s Ex. J.)

{¶ 5} Khalil and Rachpal signed the agreement on January 13, 2011. The actual parties to the agreement were Khalil and R&R. Pursuant to the terms of the agreement, Khalil paid R&R a $5,000 deposit upon signing the agreement. On January 17, 2011, Khalil paid R&R $15,000. It is disputed whether the $15,000 payment was a fuel deposit, paid pursuant to the terms of the agreement, or a payment for prior delinquencies unrelated to the agreement.

{¶ 6} Appellants claim that Khalil told appellees in February 2011 that he was ready to make payment and close the sale, but appellees continued to delay the sale.

Appellees counter that Khalil never suggested that they close the sale. Appellants claim that at a meeting in late February 2011, Rachpal told Khalil he could no longer close the sale because it was past 30 days after signing the agreement, and the agreement contained a deadline that specified closing had to occur prior to that time. Appellants claim Ranjit then told Khalil that the new price to close the deal would be $393,000.

{¶ 7} On March 24, 2011, appellees purchased the property but, according to appellants, would not sell it to appellants pursuant to the terms of the agreement. Jamal continued to lease the property from appellees thereafter. Appellees claim that Jamal was frequently late with his gasoline and lease payments during this time. On February 9, 2013, appellees changed the locks on the convenience store at the gas station. On February 11, 2013, the convenience store reopened under a new lessee.

{¶ 8} On May 10, 2013, appellants filed the present action. On May 9, 2014, appellants filed an amended complaint. On February 3, 2015, appellants filed a second amended complaint, adding R&R as a defendant. On December 31, 2014, appellants filed a motion for summary judgment. On January 16, 2015, appellees filed a motion for summary judgment, seeking to dismiss the action. On March 24, 2015, Shafiq filed a motion for partial summary judgment.

{¶ 9} On August 10, 2015, the trial court issued a judgment which denied appellants' motion for summary judgment, denied Shafiq's motion for partial summary judgment, and granted appellees' motion for summary judgment, finding that the agreement was not a valid contact because it violated the statute of frauds. The court found that the agreement was a mutual expression of the parties' intent to negotiate in good faith a written contract for the sale of real property. The parties subsequently dismissed all other pending claims. Appellants appeal the judgment of the trial court, asserting the following assignment of error:

> The trial court erred when it denied Appellant summary judgment and granted Appellees summary judgment, dismissing Appellant's claim for breach of contract and specific performance.

(Sic passim.)

{¶ 10} Appellants argue in their assignment of error that the trial court erred when it denied their motion for summary judgment and granted appellees' motion for summary

judgment. Summary judgment is appropriate when the moving party demonstrates that: (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion when viewing the evidence most strongly in favor of the non-moving party, and that conclusion is adverse to the non-moving party. *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, ¶ 29; *Sinnott v. Aqua-Chem, Inc.*, 116 Ohio St.3d 158, 2007-Ohio-5584, ¶ 29. Appellate review of a trial court's ruling on a motion for summary judgment is de novo. *Hudson* at ¶ 29. This means that an appellate court conducts an independent review, without deference to the trial court's determination. *Zurz v. 770 W. Broad AGA, LLC*, 192 Ohio App.3d 521, 2011-Ohio-832, ¶ 5 (10th Dist.); *White v. Westfall*, 183 Ohio App.3d 807, 2009-Ohio-4490, ¶ 6 (10th Dist.).

{¶ 11} When seeking summary judgment on grounds that the non-moving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the non-moving party's claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The moving party does not discharge this initial burden under Civ.R. 56 by simply making a conclusory allegation that the non-moving party has no evidence to prove its case. *Id.* Rather, the moving party must affirmatively demonstrate by affidavit or other evidence allowed by Civ.R. 56(C) that the non-moving party has no evidence to support its claims. *Id.* If the moving party meets its burden, then the non-moving party has a reciprocal burden to set forth specific facts showing that there is a genuine issue for trial. Civ.R. 56(E); *Dresher* at 293. If the non-moving party does not so respond, summary judgment, if appropriate, shall be entered against the non-moving party. *Id.*

{¶ 12} In the present case, the trial court found that the agreement did not qualify as a valid written document for the purchase of land in compliance with the statute of frauds set forth in R.C. 1335.05. The trial court viewed the agreement as an inartfully drafted document that could best be described as a mutual expression of the parties' intent to negotiate in good faith a written contract for real property. The court found that the agreement did not comply with R.C. 1335.05 for the following reasons: (1) the agreement described an "INTENT TO PURCHASE THE BUSINESS KNOWN AS FUEL

AMERICA," and not land, (2) even if the agreement did describe land, the parties knew that the seller, R&R, was not the owner of the property and would have to first successfully purchase the property before it could enter into any enforceable contract for the sale of such property, (3) the agreement was not specific or ascertainable as to the actual terms of purchase, because it indicated the purchase price was $270,000, plus "ALL COSTS" associated with bringing the location to meet Bureau of Underground Storage Tank Regulations ("BUSTR") standards, plus "ANY OTHER REASONABLE COSTS" involved in buying the property, and these additional costs were not agreed upon. The trial court concluded that appellants' claims for specific performance, breach of contract, and anticipatory breach of contract failed due to the lack of a valid contract.

{¶ 13} As it applies to contracts concerning real estate, the statute of frauds ensures " 'that transactions involving realty interests are commemorated with sufficient solemnity. A signed writing provides greater assurance that the parties and the public can reliably know when such a transaction occurs. It supports the public policy favoring clarity in determining real estate interests and discourages indefinite or fraudulent claims about such interests.' " *Beaverpark Assocs. v. Larry Stein Realty Co.*, 2d Dist. No. 14950 (Aug. 30, 1995), quoting *N. Coast Cookies, Inc. v. Sweet Temptations, Inc.*, 16 Ohio App.3d 342, 348 (8th Dist.1984). Agreements that do not comply with the statute of frauds are unenforceable. *Hummel v. Hummel*, 133 Ohio St. 520 (1938).

{¶ 14} R.C. 1335.05 sets forth Ohio's Statute of Frauds, providing, in pertinent part:

> No action shall be brought whereby to charge the defendant * * * upon a contract or sale of lands, tenements, or hereditaments, or interest in or concerning them * * * unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized.

{¶ 15} This court has previously found that " '[a]ny signed memorandum is sufficient to satisfy the Statute of Frauds so long as it (1) identifies the subject matter of the agreement, (2) establishes that a contract has been made, and (3) states the essential terms with reasonable certainty.' " *Lamkin v. First Community Bank*, 10th Dist.

No. 00AP-935 (Mar. 29, 2001), quoting *Busler v. D & H Mfg., Inc.*, 81 Ohio App.3d 385, 389 (10th Dist.1992), citing *N. Coast Cookies* at 349.

{¶ 16} Applying the legal principles regarding the statute of frauds to the agreement in the present case, we find the trial court erred when it found appellees were entitled to summary judgment as a matter of law. Although we agree with the trial court that the agreement initially describes only an "INTENT TO PURCHASE THE BUSINESS KNOWN AS FUEL AMERICA" and not the actual land, the remainder of the agreement includes the street address of the real property and refers several times to the subject matter as "THIS PROPERTY" or "THE PROPERTY." There was no dispute between the parties as to which parcel of land the agreement was referring. We find this language sufficiently identifies the subject matter of the agreement as the real property and business located thereon.

{¶ 17} The trial court also found that the agreement was not a valid contract pursuant to the statute of frauds because the parties knew that the seller, R&R, was not the owner of the property and would have to first successfully purchase the property before they could enter into any enforceable contract for the sale of such property. We fail to see how this fact places the agreement in violation of R.C. 1335.05. The trial court cites no authority for this proposition, and we can find none. If the trial court was finding that the agreement did not establish that a contract had been made, as referenced in the second requirement in *N. Coast Cookies*, we find such finding erroneous. "An agreement for the sale of real estate is binding even though the offeror may not own the property at the execution of the agreement." *Blackburn v. T & L Builders*, 8th Dist. No. 71875 (Feb. 12, 1998). "The key element is whether at the time for consummation of the contract the seller is in a position to carry out the contract." *Id.,* citing *Brow v. Cannady*, 8th Dist. No. 16903 (May 8, 1939). Here, the contract was clear that appellees could not sell the property until they acquired it from the current owner. Both parties were completely aware of the contingency, and this arrangement was the underlying basis for entering the contract in the first place.

{¶ 18} As for the trial court's finding that the purchase price was not specific or ascertainable from the agreement because it did not indicate specific figures for "ALL COSTS" associated with bringing the location to meet BUSTR standards and "ANY

OTHER REASONABLE COSTS" involved in purchasing the property, we find the agreement stated the essential price terms with reasonable certainty. A contract price must be definite and certain. *Preston v. First Bank of Marietta*, 16 Ohio App.3d 4, 6 (4th Dist.1983). If a price term is "so vague and indefinite that one party may charge what he will while the other party must guess at his obligation, the contract is illusory and unenforceable." *Id.* However, a contract is not unenforceably vague if the agreed price is not specifically stated. *Id.* (finding that, although a contract must be definite as to price, it is just as well-established that parties may make a binding contract where the price is not stated exactly). The law may impose a presumption of reasonableness or "fair value" when services are performed pursuant to an express contract that does not specify a price. *Oglebay Norton Co. v. Armco, Inc.*, 52 Ohio St.3d 232, 236-37 (1990) (allowing an analogy of the Uniform Commercial Code's presumption of reasonableness for a missing or open price term to a services contract).

{¶ 19} In the present case, "all costs" is a reasonably descriptive term under the circumstances. The agreement specifies that appellees would perform all necessary work to bring the property into compliance with BUSTR, and appellants would reimburse appellees for all of those costs. The obligation was not unlimited and did not subject appellees to indefinite liability. Instead, appellees agreed to pay for "all" of the costs associated with BUSTR compliance. The parties were both experienced in business and gas stations; thus, they were aware of the potential costs of BUSTR compliance. Although the phrase "any other reasonable costs" is less definitive, we find it sufficient to satisfy the requisites for a valid contract consistent with the statute of frauds. It clearly evinces an agreement by the parties that appellees would pay any additional costs in procuring the property, with the limitation that they be reasonable. Again, the parties were both experienced in business and knew appellees would incur additional costs in obtaining the property for resale.

{¶ 20} We find *Ruhe v. Hemmelgarn*, 2d Dist. No. 96-CA-1423 (Aug. 22, 1997), instructive. In *Ruhe*, the court found contract language similar to that at bar sufficiently satisfied the statute of frauds in a case relating to the sale of real property. In that case, the parties executed no written contract for the sale of land, but the landowner prepared a receipt when the purchaser paid him $300. The receipt showed the purchase price and

balance due and indicated that the purchaser still owed "any other costs to close" and "[r]easonable survey costs." *Id.* The court of appeals determined that the receipt satisfied the statute of frauds, despite that it did not contain a specific statement of agreement or exact prices for the closing and survey costs. The court found that a reasonable inference to be drawn from the statements in the receipt, including those as to "any other costs to close" and "[r]easonable survey costs," was that an agreement of sale was made. *Id.* The court concluded that the essential terms were identified with reasonable certainty, since the receipt contained the parties' names, subject matter, and terms of purchase. Thus, the receipt satisfied the statute of frauds. Similarly, in the present case, the language "all costs" and "any other reasonable costs" sufficiently described the terms of purchase and demonstrated that the parties made an agreement of sale.

{¶ 21} We also note that the court in *Ruhe* made another finding relevant to the present case with regard to the identification of the property at issue. The court in *Ruhe* found that, although the landowner claimed the receipt did not adequately reference the property at issue because it generically described a one-acre lot when there were several lots for sale, the surrounding evidence demonstrated that both parties knew exactly which property was the subject of negotiations. Likewise, in the present case, despite the reference in the agreement to "THE BUSINESS KNOWN AS FUEL AMERICA," there was never any dispute that the parties knew both the gas station/convenience store and the real property upon which it sat were the subject of the agreement.

{¶ 22} For these reasons, and being mindful that we must construe the evidence most strongly in favor of appellants in adjudicating appellees' motion for summary judgment, we find the trial court erred when it granted appellees summary judgment on the basis that the agreement did not satisfy the statute of frauds.

{¶ 23} In its decision, the trial court also found that appellees were entitled to summary judgment on appellants' claim for specific performance, money damages for breach of contract, and anticipatory breach of contract. The trial court reasoned that these claims were all dependent upon a valid written contract, and the present agreement did not constitute such. Given our finding above, however, the trial court's basis for rejecting these claims is no longer valid. Thus, these issues must be returned to the trial court upon remand for consideration.

{¶ 24} The court also found that appellants were not entitled to recover on their anticipatory breach of contract claim on the additional ground that the undisputed facts in the record established that at least one of the reasons no written purchase agreement was presented by appellants within 30 days of March 24, 2011, was that appellants did not have the $270,000 purchase price, and even if they had such funds, there was no evidence that appellants were willing to assume potential personal liability to bring the property into compliance with BUSTR regulations. The court found that Ranjit and Rachpal challenged appellants to present probative evidence on these issues, but appellees failed to respond with Civ.R. 56 evidence establishing a genuine issue of material fact.

{¶ 25} " 'An anticipatory breach of contract by a promisor is a repudiation of the promisor's contractual duty before the time fixed for performance has arrived.' " *Metz v. Am. Elec. Power Co., Inc.*, 172 Ohio App.3d 800, 2007-Ohio-3520, ¶ 35 (10th Dist.), quoting *McDonald v. Bedford Datsun*, 59 Ohio App.3d 38, 40 (8th Dist.1989). To prevail on a claim of anticipatory breach of contract, a plaintiff must establish that there was a contract containing some duty of performance not yet due and, by word or deed, the defendant refused future performance, causing damage to the plaintiff. *Id.* Thus, "[t]he repudiation must be expressed in clear and unequivocal terms." *Id.* A mere request for a change in terms or for cancellation does not constitute repudiation. *Sunesis Trucking Co., Inc. v. Thistledown Racetrack, L.L.C.*, 8th Dist. No. 100908, 2014-Ohio-3333, ¶ 31. Similarly, a " 'mere expression of doubt as to willingness or ability to perform is insufficient to constitute repudiation' of a contract." *Id.*, quoting *Farmers Comm. Co. v. Burks*, 130 Ohio App.3d 158, 172 (3d Dist.1998).

{¶ 26} In the present case, appellants' claim for anticipatory breach of contract was based upon their contention that Khalil was ready and willing to proceed with a purchase pursuant to the agreement, and appellants expressed such to appellees, but appellees (1) refused to close the transaction, (2) contended the 30-day deadline to close, as set forth in the agreement, had passed as of late February 2011, and (3) increased the purchase price by $100,000 in February 2011. In support of his claim that he was ready and willing to proceed with the purchase, Khalil submitted with his motion for summary judgment a bank statement from February 11 through March 10, 2011, showing he deposited $290,000 into his bank account on February 11, 2011. Khalil also submitted an

affidavit indicating that he was ready and willing to proceed with the sale, and further averred he would have been able to obtain additional monies if necessary to close the sale.

{¶ 27} After reviewing the record, we find the trial court's cited bases were not valid grounds to support summary judgment in favor of appellees on appellants' anticipatory breach of contract claim. Initially, there is nothing in the agreement that specifies appellants were required to show proof of their ability to pay the $270,000 purchase price, plus the other costs specified in the agreement, at any time prior to closing or that appellants were required to express a willingness to assume potential personal liability to bring the property into compliance with BUSTR. Thus, because these conditions were not requirements under the agreement, the alleged violation of these conditions was not a valid basis to grant appellees summary judgment.

{¶ 28} Notwithstanding, the trial court's reasoning is based upon flawed evidentiary material. The trial court cited the affidavits of Ranjit and Rachpal that included clearly erroneous assumptions and irrelevant information. In Ranjit's affidavit attached to appellees' motion for summary judgment, Ranjit averred that appellants told him at a February 10-11, 2011 meeting that appellants did not have the money to proceed with the transaction. Ranjit also averred that Khalil could not have shown him the February 11 through March 10, 2011 bank statement at the February 10-11, 2011 meeting because the bank statement had not been generated as of that date.

{¶ 29} However, in their motion for summary judgment, affidavits, and depositions, Ranjit and Rachpal express the belief that the deadline for appellants to purchase under the agreement was February 12, 2011. Apparently, Ranjit and Rachpal believed the agreement required Khalil to perform within 30 days of the execution of the agreement, which was January 13, 2011. However, the agreement is clear that "THE CLOSING [between appellants and appellees] WILL BE WITHIN THIRTY DAYS AFTER R&R PURCHASES IT FROM RECEIVER." Thus, whether appellants expressed to Ranjit on February 10-11, 2011 that they did not have the money to proceed with the transaction is not relevant to whether appellants would be able to perform on April 23, 2011, which would have been 30 days after appellees purchased the property from the receiver. Furthermore, whether appellants showed Ranjit the bank statement at the February 10-11, 2011 meeting is irrelevant. Appellees are apparently under the mistaken impression

that appellants were required to show them evidence of certified or guaranteed funds sufficient to cover the price of the transaction, which is nowhere in the agreement. Nevertheless, contrary to the trial court's finding that appellants failed to present any evidence that they were ready and willing to proceed with the purchase prior to the 30-day deadline, the bank statement was probative evidence of such. However, as mentioned, we need not address these issues, as the agreement did not require that appellants demonstrate they had the available funds at any particular point prior to the 30-day deadline. Therefore, the trial court could not have rendered summary judgment to appellees on appellants' anticipatory breach of contract claim on these grounds. For the foregoing reasons, we find the trial court erred when it granted summary judgment to appellees on the bases relied upon in its judgment. Appellants' assignment of error is sustained.

{¶ 30} Accordingly, appellants' single assignment of error is sustained, the judgment of the Franklin County Court of Common Pleas is reversed, and this matter is remanded to that court for further proceedings in accordance with law, consistent with this decision.

*Judgment reversed;*
*cause remanded.*

LUPER SCHUSTER and BRUNNER, JJ., concur.

_____