[Cite as *Veritext, L.L.C. v. Newman Law Group, L.L.C.*, 2026-Ohio-2108.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| VERITEXT LLC | : | |
| | : | C.A. No. 30699 |
| Appellee | : | |
| | : | Trial Court Case No. 2023 CV 01128 |
| v. | : | |
| | : | (Civil Appeal from Common Pleas |
| NEWMAN LAW GROUP LLC | : | Court) |
| | : | |
| Appellant | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on June 5, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

_____
ROBERT G. HANSEMAN, JUDGE

LEWIS, P.J., and TUCKER, J., concur.

PETER K. NEWMAN, Attorney for Appellant
MARK J. SHERIFF, JEFFREY L. KOBERG, and MATTHEW W. MCDONALD, Attorneys for Appellee

HANSEMAN, J.

{¶ 1} Appellant Newman Law Group LLC ("Newman") appeals from the judgment of the Montgomery County Common Pleas Court denying its motion for summary judgment and granting partial summary judgment in favor of appellee Veritext LLC ("Veritext") on Veritext's claim of money due on account. Newman also appeals from the trial court's judgment awarding Veritext $50,748.73 in damages following a bench trial. For the reasons outlined below, the judgment of the trial court is affirmed.

**Facts and Course of Proceedings**

{¶ 2} Veritext is a limited liability company in the business of providing court-reporting services. Newman is a law firm based in Dayton, Ohio. On March 6, 2023, Veritext filed a complaint against Newman that asserted claims of money due on account, quantum meruit, and unjust enrichment. The complaint stemmed from Newman's alleged failure to pay Veritext for court-reporting services it provided between March 2020 and January 2022. Veritext attached a statement of account to the complaint that showed the dates of its unpaid services and the balances due. Based on those balances, Veritext requested $50,921.26 in damages.

{¶ 3} Newman filed an answer that generally denied the allegations in Veritext's complaint and raised several affirmative defenses. Newman also filed counterclaims alleging that Veritext had violated the Fair Debt Collection Practices and Consumer Sales Practices Acts, breached an implied contract, and committed fraud and misrepresentation and tortious

2

interference with a contract. In addition, Newman filed third-party complaints against five of its former clients. In the complaints, Newman alleged that its clients had an agreement with Newman to pay for all of the court-reporting services at issue.

{¶ 4} On April 5, 2024, Veritext and Newman filed cross-motions for summary judgment. In Veritext's motion, it argued that, based on relevant case law and Newman's responses to its request for admissions, there was no genuine issue of material fact left for trial concerning Newman's liability for the unpaid court-reporting-service fees and that Veritext was entitled to judgment as a matter of law on its claim on account. Veritext claimed that the only issue remaining for trial was the amount of damages to be awarded. Veritext also argued that it was entitled to judgment as a matter of law on each of Newman's counterclaims.

{¶ 5} In Newman's motion for summary judgment, it argued that Veritext's claim on account failed as a matter of law because the claim was barred by the statute of frauds. Newman also argued that it was entitled to summary judgment on each of its counterclaims.

{¶ 6} On November 19, 2024, the trial court denied Newman's motion for summary judgment and granted Veritext partial summary judgment as to its claim on account and Newman's counterclaims. Relying on *Gaines Reporting Service v. Mack*, 4 Ohio App.3d 234 (6th Dist. 1982) and its progeny, the trial court found that, as a matter of law, Newman was liable for the court-reporting-service fees at issue, but agreed that there remained a genuine issue of material fact as to the amount of damages. Accordingly, the trial court held a bench trial on the issue of damages.

{¶ 7} At the bench trial, Veritext presented damages testimony from its finance specialist, Samara Jones. Veritext also presented several invoices, which the trial court admitted into evidence under the business records exception to the hearsay rule. After

3

considering all the testimony and evidence presented at trial, the trial court ordered Newman to pay Veritext $50,748.73, plus statutory interest and costs. The amount awarded reflected the original amount sought in Veritext's complaint, minus $172.96, which represented a payment submitted directly to Veritext by one of the third-party defendants after the lawsuit was initiated.

{¶ 8} Newman now appeals from the trial court's summary judgment decision and the award of damages. In support of its appeal, Newman has raised four assignments of error for review. Because Newman's first three assignments of error all pertain to the trial court's summary judgment decision, we address those assignments of error together.

**First, Second, and Third Assignments of Error**

{¶ 9} Under its first, second, and third assignments of error, Newman challenges the portion of the trial court's summary judgment decision finding it liable for the court-reporting-service fees at issue. Newman's three assignments of error argue the following:

1. The trial court should have granted Newman summary judgment on Veritext's claim on account because it is barred by the statute of frauds.

2. The trial court's decision to grant summary judgment in favor of Veritext was erroneous because the trial court's liability determination was based on inapplicable case law, i.e., *Gaines*, 4 Ohio App.3d 234 (6th Dist. 1982).

3. The trial court's liability determination was erroneous because the court failed to apply agency law principles and failed to find that Newman was acting as an agent for its clients when it scheduled the court-reporting services at issue.

{¶ 10} For purposes of clarity, we address Newman's arguments out of order.

*Standard of Review*

{¶ 11} "Under Civ.R. 56(C), a movant is entitled to summary judgment when the movant demonstrates 'that there is no issue as to any material fact, that the moving party is entitled to judgment as a matter of law, and that reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party.'" *Rhododendron Holdings, LLC* v. *Harris*, 2021-Ohio-147, ¶ 22 (2d Dist.), quoting *Miller v. Bike Athletic Co.*, 1998-Ohio-178, ¶ 33; Civ.R. 56(C) ("Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact . . . show that there is no genuine issue as to any issue of material fact and that the moving party is entitled to judgment as a matter of law.").

{¶ 12} "Appellate review of the trial court's ruling on a summary judgment motion is de novo." *Schroeder v. Henness*, 2013-Ohio-2767, ¶ 42 (2d Dist.) "De novo review means that this court uses the same standard that the trial court should have used, and we examine all the Civ.R. 56 evidence, without deference to the trial court, to determine whether, as a matter of law, no genuine issues exist for trial." (Citations omitted.) *Beavers v. State*, 2026-Ohio-285, ¶ 11 (2d Dist.).

*Second Assignment of Error – Applicability of Gaines*

{¶ 13} Under its second assignment of error, Newman claims that the trial court erred by applying *Gaines*, 4 Ohio App.3d 234 (6th Dist.), to conclude that it was liable for the court-reporting-service fees at issue.

{¶ 14} In *Gaines*, a court-reporting service sued an attorney to recover fees for preparing a deposition transcript that was ordered by the attorney on behalf of his client. *Id*. The trial court determined that the attorney was responsible for the fees and entered a judgment in favor of the court-reporting service. *Id*. The attorney appealed from that

judgment and argued that, under the principles of agency law, he "should not have been held liable for the services obtained within the scope of his authority as an agent of a disclosed principal." *Id.* In addressing that issue, the Sixth District Court of Appeals cited the Supreme Judicial Court of Massachusetts' opinion in *Burt v. Gahan*, 351 Mass. 340 (1966), which stated the following:

> "While in a broad sense counsel may be an agent and his client a principal, there is much more involved than mere agency. The relationship of attorney and client is paramount, and is subject to established professional standards. In short, the attorney, and not his client, is in charge of litigation, and is so recognized by the court. As was said in *Judd & Detweiler, Inc. v. Gittings*, 43 App.D.C. 304, 310-311, which concerned the printing of briefs on appeal: 'The attorney usually determines what steps are to be taken in his client's interest, and the acts of the attorney in the conduct of litigation are binding upon the client. We therefore deem the just and equitable rule of law thus established to be that, in the absence of express notice to the contrary, court officials and persons connected, either directly or indirectly, with the progress of the litigation, may safely regard themselves as dealing with the attorney, instead of with the client. This applies not only to obligations incurred by the attorney for actual costs attending the litigation, but to the necessary expenses of attorneys, including the printing of briefs, which are not chargeable as costs in the case.'"

*Gaines* at 234, quoting *Burt* at 342-343.

{¶ 15} Based on the foregoing reasoning, the Sixth District held in *Gaines* that "in the absence of an express agreement to the contrary, an attorney will be liable for stenographic

6

services ordered by the attorney on behalf of a client." *Id*. at 234-235. Several other appellate districts in this state have adopted that holding and applied it to expert services as well. *See, e.g.*, *Blake v. Ingraham*, 44 Ohio App.3d 38, 39 (9th Dist. 1989); *Allen v. Donlin*, 1996 WL 206784, *2-3 (11th Dist. Feb. 16, 1996); *Sommer v. French*, 115 Ohio App.3d 101, 104-105 (9th Dist. 1996); *Spectrum Reporting LLC v. Abroms*, 2008-Ohio-3566, ¶ 6-13 (10th Dist.). "The express-agreement rule is predicated on the obvious fact that mere knowledge that an attorney is representing a client hardly constitutes notice that payment must be secured only from the attorney's client." *Sommer* at 104, citing *Allen*.

{¶ 16} In *John E. Foster and Associates, Inc. v. La Cour*, 1994 WL 258381 (10th Dist. June 9, 1994), the Tenth District Court of Appeals held that *Gaines* did not apply to a scenario where, prior to any services being performed, an attorney expressly informed an expert service provider that the attorney's clients would be responsible for paying the expert's fees. *Id*. at *2-3. In reaching that conclusion, the Tenth District found that "express notice," not an "express agreement" was required. *Id*. at *3. Because the attorney in *Foster and Associates* had expressly notified the expert that the attorney's clients would be responsible for paying the expert's fees, the Tenth District held that the trial court erred by applying *Gaines* and finding the attorney liable for the fees. *Id*. In so holding, the court stated the following:

> We decline to hold that an attorney is responsible for bills for services the
> attorney procured on behalf of a client when the attorney expressly informed
> the service provider in advance that the client would be responsible for the bill
> and the provider expressed no objection and performed the services.
>
> . . .

7

. . . Once a provider of services connected with litigation is put on notice that the client, not the attorney, will be liable for payment, such provider has the option of performing the services or first requiring a guarantee of payment from the attorney.

*Id*. at *2-3.

{¶ 17} Fourteen years later, in *Spectrum Reporting*, 2008-Ohio-3566 (10th Dist.), the Tenth District distinguished *Foster and Associates* from a situation where "there was an absence of express notice in advance that [the attorney's] client would be responsible for the bill for plaintiff's [court-reporting] services." *Id*. at ¶ 13. The court explained that "[i]n *Gaines*, there was no evidence that the attorney had informed the court reporter that his client would be responsible for the bill; whereas, in *Foster and Associates, Inc*., the trial court found that the attorney had informed the plaintiff before services were provided that the identified clients would be responsible for the bill." *Id.* at ¶ 9. Because the attorney in *Spectrum Reporting* did not provide express notice to the court reporter that his client would be responsible for the court-reporting services, the Tenth District found that the court reporter was "safe to regard itself as dealing with [the attorney] as to those services." *Id*. at ¶ 13. Accordingly, the Tenth District affirmed the trial court's judgment finding that the attorney was liable for the court reporter's fees. *Id*. at ¶ 17.

{¶ 18} Here, Newman contends that the trial court erred by applying *Gaines*, as opposed to *Foster and Associates*, because Newman's past course of dealing with Veritext and the company that Veritext acquired in 2019, Mike Mobley Reporting, established that Veritext had prior notice that Newman's clients were solely responsible for the payment of its court-reporting services. According to Newman, there was an implied contract with Veritext to that effect. The record, however, does not support that assertion.

8

{¶ 19} Todd Mobley, the former president of Mike Mobley Reporting and a current principal of Veritext, was deposed and testified that while president of Mike Mobley Reporting, he "would have always held the hiring attorney responsible . . . for the bill" and that it was his understanding that "Veritext is the same way." Todd Mobley Dep. Tr. 9-10. In an affidavit, Mobley also averred that, based on his personal knowledge, "Mike Mobley Reporting never had any written or verbal agreement with [Newman] that [Newman's] clients would be responsible for court reporting services ordered by [Newman]." Plaintiff's Memo Contra Defendant's Motion for Summary Judgment (May 3, 2024), Exhibit 2, Affidavit of Todd Mobley, ¶ 3.

{¶ 20} Veritext's finance specialist, Jones, averred that it has

a specific procedure whereby an attorney or a law firm can request, in writing, that we bill their client, which we very rarely use. In those cases the attorney or law firm must make the request and also provide us with written consent from their client that said client will agree to pay us directly. Depending on who that client may be we would also need to receive sufficient financial information to determine if the attorney or law firm's client had the ability to timely pay us in full. Lastly, we would then need to consent in writing to such an arrangement.

Plaintiff's Motion for Partial Summary Judgment (Apr. 5, 2024), Exhibit 3, Affidavit of Samara Jones, ¶ 6.

{¶ 21} Jones also averred that Veritext

never received any requests from [Newman] to bill [its] clients direct nor did we ever consent to such an arrangement. Additionally, we had never done that before for [Newman]. [Newman] had previously done business with

9

another Court Reporting firm that we acquired by the name of Mike Mobley Reporting. Their records that we acquired also show that they never had an arrangement with [Newman] where they invoiced [its] clients direct and even if they had it would not apply to us.

*Id*. at ¶ 7.

{¶ 22} The foregoing portions of the record establish that Newman never availed itself of Veritext's procedure for billing Newman's clients directly and that Veritext had no express notification or agreement with Newman to undertake such a billing practice. Significantly, in its responses to Veritext's request for admissions, Newman admitted that it "had no written agreement with [Veritext] under which Veritext agreed to bill [Newman's] clients for the court reporting services ordered on their behalf." Plaintiff's Motion for Partial Summary Judgment (Apr. 5, 2024), Exhibit 2, p. 2. Newman also admitted that it merely had an "implied contract" with Veritext and Mobley Reporting under which it "scheduled deposition and other court reporting work on behalf of its clients, the court reporting firms would send [it] invoices for this work . . ., and [it] would in turn forward these invoices to its clients for payment." *Id*. Veritext did not dispute that the parties operated under that arrangement, but the fact remains that such an arrangement does not constitute express notice or an express agreement for Veritext to hold only Newman's clients responsible for its fees.

{¶ 23} We note that while Newman may have had express fee agreements with its clients that required its clients to pay for all court-reporting services, any such agreements would be irrelevant with regard to its liability to Veritext. *See Sommer*, 115 Ohio App.3d at 105 (holding that attorney's contingency fee arrangement with clients requiring them to pay expert fees is irrelevant). Though Newman's fee agreements may evidence its subjective intent about whom it believed was financially responsible for court-reporting services, such

10

subjective intent does not establish that Newman gave express notice to Veritext or had an express agreement with Veritext on that matter.

{¶ 24} Simply stated, there is no evidence indicating that Newman had expressly notified or expressly agreed with Veritext that Veritext would hold only Newman's clients financially responsible for Veritext's court-reporting services. Although the record indicates that some of Newman's clients eventually paid Veritext directly for some of its services, such dealings do not establish that there was an express notification or an express agreement for Veritext to hold only Newman's clients financially responsible. Accordingly, we find that *Gaines* and its progeny applies to this case, and under either the holding in *Gaines* (which requires an express agreement) or the holding in *Foster and Associates* (which requires express notice), Newman must be held liable for the court-reporting-service fees at issue.

{¶ 25} Newman's second assignment of error is overruled.

*Third Assignment of Error – Agency Law*

{¶ 26} Under its third assignment of error, Newman claims that the trial court should have applied basic agency law and found that it was acting as a disclosed agent for its clients when it procured the court-reporting services at issue. Under agency law, "[a]n agent will not be personally liable for acts done on behalf of a principal if the agent disclosed that he was acting as an agent and identified the principal." *Foster and Associates*, 1994 WL 258381 at *4. Newman claims that, as a disclosed agent for its clients, it cannot be held liable for the court-reporting-service fees.

{¶ 27} *Gaines* noted that "'[w]hile in a broad sense counsel may be an agent and his client a principal, there is much more involved than mere agency. The relationship of attorney and client is paramount, and is subject to established professional standards. In short, the attorney, and not his client, is in charge of litigation, and is so recognized by the

11

court.'" *Gaines*, 4 Ohio App.3d at 234, quoting *Burt*, 351 Mass. at 342; *accord Blake*, 44 Ohio App.3d at 39.

{¶ 28} In *Foster and Associates*, the Tenth District observed that "[w]hile it is true that professional standards govern attorney-client relations, they do not warrant deviating from agency law unless such a standard applies to the present situation and alters the legal relationship of the parties." *Foster and Associates* at *4. In that case, an attorney provided express notice to the service provider that his clients would be financially responsible for the provider's fees, and the Tenth District determined that the attorney was acting as a disclosed agent for its principal and was therefore not liable to the service provider under agency law. *Id*. at *4.

{¶ 29} The Tenth District, however, reached a different conclusion in *Spectrum Reporting*, 2008-Ohio-3566 (10th Dist.). In *Spectrum Reporting*, the court distinguished the situation in *Foster and Associates* from a situation where an attorney did not expressly notify the service provider that his client would be financially responsible for the service provider's fees. In the latter scenario, given the attorney's lack of express notice to the service provider, the Tenth District found the attorney financially liable for the service provider's fees. *Id.* at ¶ 9-13, 17.

{¶ 30} The present case is analogous to *Spectrum Reporting* and distinguishable from *Foster and Associates* because there was no express notification for Veritext to hold only Newman's clients financially responsible for its fees. Therefore, the trial court did not err by failing to apply basic agency law, as it correctly applied the principles in *Gaines* and *Spectrum Reporting* to find that Newman was liable for the court-reporting-service fees at issue.

{¶ 31} Newman's third assignment of error is overruled.

*First Assignment of Error – Statute of Frauds*

**{¶ 32}** Under its first assignment of error, Newman claims that the trial court should have granted it summary judgment on the issue of liability for the court-reporting-service fees because Veritext's claim on account is barred by the statute of frauds. We disagree.

**{¶ 33}** "In relevant part, the statute of frauds requires an agreement to be in writing and to be signed by the party against whom enforcement is sought if it obligates the defendant 'to answer for the debt . . . of another person' or if it is one 'that is not to be performed within one year from the making thereof.'" *Essig v. Blank*, 2021-Ohio-2602, ¶ 6 (2d Dist.), quoting R.C. 1335.05. "Agreements that do not comply with the statute of frauds are unenforceable." *Qutifan v. Shafiq*, 2016-Ohio-4555, ¶ 13 (10th Dist.), citing *Hummel v. Hummel*, 133 Ohio St. 520 (1938).

**{¶ 34}** Newman claims that because it is undisputed that the parties do not have a written agreement and because Newman was being asked to answer for the debt of another, its clients, the statute of frauds applies and makes the parties' agreement unenforceable, thus barring Veritext's claim on account. However, as we have stressed, under *Gaines* and its progeny, when there is no express agreement or express notice providing otherwise, the debt for court-reporting services falls on the attorney, not the client. Because there was no such express agreement or notice in this case, we find that the parties' agreement required Newman to answer for the debt that it directly incurred for the court-reporting services, not for the debt of another. Newman's claim that the statute of frauds applies based on its purported obligation to answer for the debt of its clients lacks merit.

**{¶ 35}** Newman also claims that the statute of frauds applies "because the time for performance of Veritext's implied contract with [Newman] was definite and covered more

than one year." Specifically, it claims that the court-reporting services at issue spanned from March 18, 2020, to January 6, 2022, which is well over a year.

{¶ 36} Ohio courts have strictly construed the "not to be performed within one year" provision of the statute of frauds as to apply only to agreements that, by their terms, cannot be fully performed within a year. *Stiles v. Bugno*, 2024-Ohio-1262, ¶ 37 (7th Dist.), citing *Nonamaker v. Amos*, 73 Ohio St. 163, 172-177 (1905), and *Sherman v. Haines*, 1995-Ohio-222, ¶ 7. The Supreme Court of Ohio has explained:

> For over a century, the "not to be performed within one year" provision of the Statute of Frauds, in Ohio and elsewhere, has been given a literal and narrow construction. The provision applies only to agreements which, by their terms, cannot be fully performed within a year, and not to agreements which may possibly be performed within a year. Thus, where the time for performance under an agreement is indefinite, or is dependent upon a contingency which may or may not happen within a year, the agreement does not fall within the Statute of Frauds.

*Sherman* at ¶ 7.

{¶ 37} Here, the parties' pleadings and accompanying exhibits establish that Veritext performed court-reporting work for Newman on several dates between March 2020 and January 2022. The Statement of Account attached to Veritext's complaint shows that Veritext performed 30 separate "jobs" for Newman on various specified dates and separately invoiced Newman for each job just a few weeks after the job date. Complaint (Mar. 6, 2023), Exhibit A. The record indicates that the court-reporting services in this case, which primarily involved the transcription of depositions, were fully performed within one year. Newman's

14

argument that the statute of frauds applies because Veritext's court-reporting services were not performed within one year lacks merit.

{¶ 38} It is also significant that Veritext fully performed its part of the agreement by providing the court-reporting services ordered by Newman. Veritext's full performance of the contract takes this matter outside the statute of frauds because even partial performance is sufficient to remove it from the statute. *Dart v. Katz*, 2021-Ohio-1429, ¶ 70 (2d Dist.) ("oral agreements may be 'removed from operation of the Statute of Frauds . . . through the doctrine[ ] of partial performance'"), quoting *Gunsorek v. Heartland Bank*, 124 Ohio App.3d 735, 740 (10th Dist. 1997); *Stout v. M. Aron Corp.*, 1993 WL 169102, *6 (10th Dist. May 13, 1993) ("full performance of a contract by one party bars a statute of frauds defense by the other party"), citing *Towsley v. Moore*, 30 Ohio St. 184, 194 (1876); *Shaver v. Priore*, 1997 WL 450036, *3 (8th Dist. Aug. 7, 1997) ("plaintiff's full performance of her obligations under the agreement took the agreement out of the Statute of Frauds"); *Adkins, Inc. v. Douglas Co.*, 1982 WL 6150, *2 (7th Dist. June 25, 1982) ("[e]ven if the statute of frauds was applicable, it would not bar plaintiff's cause of action against defendant because plaintiff had fully performed the work and materials that is the subject of this case"); *DeAscentisi v. Margello*, 2008-Ohio-6821, ¶ 27 (10th Dist.) ("full performance of [plaintiff's] obligations under the contract bars the raising of a statute of frauds defense").

{¶ 39} Newman's first assignment of error is overruled.

**Fourth Assignment of Error**

{¶ 40} Under its fourth assignment of error, Newman claims that the trial court erred by awarding Veritext damages of $50,748.73 because (1) the award was based on invoices that were improperly admitted into evidence under the business-records exception to the hearsay rule, and (2) Veritext failed to mitigate its damages.

*Business-Records Exception to Hearsay Rule*

{¶ 41} "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted in the statement." Evid.R. 801(C). Hearsay is generally not admissible at trial unless permitted under specific circumstances. Evid.R. 801 and 802. Under the business-records exception in Evid.R. 803(6), the following evidence is not excluded by the rule against hearsay:

> **Records of Regularly Conducted Activity.** A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

{¶ 42} "In an action on an account, invoices are competent evidence if they qualify under the business records exception to the hearsay rule." *AMF, Inc. v. Mravec*, 2 Ohio App.3d 29 (8th Dist. 1981), paragraph four of the syllabus. "To qualify for admission under Evid.R. 803(6), a business record must satisfy four essential elements: (1) it must be one regularly recorded in a regularly conducted activity, (2) it must have been entered by a person with knowledge of the act, (3) it must have been recorded at or near the time of the transaction, and (4) a foundation must be laid by the custodian of records or some other qualified witness." *Discover Bank v. Hanson*, 2026-Ohio-140, ¶ 18 (2d Dist.), citing *State v. Hood*, 2012-Ohio-6208, ¶ 39.

16

{¶ 43} "Generally, the business record exception requires that someone testify as to the regularity and reliability of the business activity involved in the creation of the record." *Id*., citing *State v. Hirtzinger*, 124 Ohio App.3d 40, 49 (2d Dist. 1997). "Although the testifying witness need not have personal knowledge of the creation of the record in question, the witness 'must possess a working knowledge of the specific record-keeping system that produced the document' and '"be able to vouch from personal knowledge of the record-keeping system that such records were kept in the regular course of business."'" *Id*., quoting *State v. Davis*, 62 Ohio St.3d 326, 342 (1991), quoting *Dell Publishing Co., Inc. v. Whedon*, 577 F.Supp. 1459, 1464, fn. 5 (S.D.N.Y. 1984).

{¶ 44} We review a trial court's decision to admit business records as an exception to the hearsay rule for abuse of discretion. *CitiMortgage, Inc. v. Elrod*, 2017-Ohio-8442, ¶ 33 (11th Dist.), citing *Peters v. Ohio State Lottery Comm*., 63 Ohio St.3d 296, 299 (1992). "'A trial court abuses its discretion when it admits a business record in the absence of an adequate foundation to establish admissibility under Evid.R. 803(6).'" *State Farm Mut. Auto. Ins. Co. v. Anders*, 2012-Ohio-824, ¶ 12 (10th Dist.), citing *State v. Myers*, 2003-Ohio-4135, ¶ 58 (10th Dist.).

{¶ 45} In this case, as evidence of its damages, Veritext offered invoices for the unpaid court-reporting services that were provided to Newman. The invoices, while hearsay, were admitted into evidence under the business-records exception under Evid.R. 803(6). Newman claims that the trial court abused its discretion by admitting the invoices under that exception on grounds that Veritext did not present a qualified witness with sufficient personal knowledge of how the invoices were produced. We disagree.

{¶ 46} Veritext's finance specialist, Jones, testified that the invoices were prepared in the ordinary course of Veritext's business. Trial Tr. 15. Although Jones testified that she did

17

not prepare the invoices herself, she testified regarding Veritext's billing process and how invoices are prepared. She explained that Veritext's billing department prepares the invoices and that the billing manager assigns the task for a billing team member to prepare the invoices. More specifically, Jones explained:

> [C]ourt reporters put in a job sheet. The job sheet is provided to client services calendar. They input the job sheet so that it automatically shows up on the billing team side. . . . [A] billing team member from Midwest [the region where the invoices were mailed out from] builds . . . the invoice. Billing manager just oversees the billing team. There is a team that is in the Midwest that actually does the billing and it's individual people. It's not just one person.
>
> . . .
>
> All financial departments have access to the – every – every department has access to an invoice. I can't even say the finance department because client services, calendar, we all - - anybody that works for Veritext has access to an invoice because we work in one system where the invoices are produced.

Tr. 37-38.

**{¶ 47}** Jones confirmed that, using Veritext's system, she could determine who prepared the invoices and whether the invoices were prepared near the time the court-reporting services were rendered. *Id*. at 49. Based on the information she had about Veritext's billing procedures, Jones also confirmed that the invoices were prepared based on the company's standard procedure. *Id*. at 50.

**{¶ 48}** When addressing the issue of whether Jones had laid a proper foundation for Veritext to admit the invoices under Evid. R. 803(6), the trial court stated that Jones had

18

testified that the invoicing process is one that moves through a complex network of individuals and business systems. If it gets initiated by the court reporter submitting some information to the billing department being overseen by the billing manager – that information residing in the business's systems accessible to multiple, if not every, department in the business and used for business purposes.

The Court would overrule the objection to the business record exception not being met. I believe that the documents have been shown to have been created at or near the time by people with knowledge. They are business records used in the ordinary course of business for Veritext.

Trial Tr. 71-72.

{¶ 49} The foregoing reasoning of the trial is sound and not an abuse of discretion. Although Jones testified that she did not personally create the invoices at issue, her testimony established that she possessed a working knowledge of Veritext's standard procedures, including its billing system and how the invoices were produced and stored. Jones, therefore, could vouch from her personal knowledge that the invoices at issue were prepared in the regular course of Veritext's business activities. Accordingly, Newman's claim that the invoices were improperly admitted under the business-records exception lacks merit.

*Mitigation of Damages*

{¶ 50} Newman also claims that the trial court's award of damages was an abuse of discretion because the court ignored evidence establishing that Veritext had failed to mitigate its damages. In support of this claim, Newman essentially argues that Veritext could have tried harder to collect the damages directly from Newman's clients by contacting the

clients, setting up payment plans, and by making certain corrections to the invoices. According to Newman, Veritext began direct collection efforts, but then stopped those efforts without reason.

{¶ 51} As a preliminary matter, we note that "a reviewing court will not reverse a trial court's decision regarding its determination of damages absent an abuse of discretion." *Darke Cty. Veterinary Serv. v. Rucker*, 2008-Ohio-4009, ¶ 9 (2d Dist.). "An abuse of discretion most often involves an unreasonable decision that is not supported by a sound reasoning process." *State v. McHenry*, 2021-Ohio-3118, ¶ 16 (2d Dist.), citing *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990).

{¶ 52} "Mitigation of damages is defined as 'the duty of a person to use reasonable efforts under all the circumstances to avoid loss or to lessen his damages.'" *Rejas Invests. v. Natl. City Bank*, 2006-Ohio-5586, ¶ 109 (2d Dist.), quoting *Jenkins v. St. Edward High School,* 1992 WL 140217, *3 (8th Dist. June 18, 1992). "As a general rule, 'an injured party has a duty to mitigate and may not recover for damages that could reasonably have been avoided.'" *Estate of Cruz v. Peffley*, 2023-Ohio-2081, ¶ 94 (2d Dist.), quoting *Chicago Title Ins. Co. v. Huntington Natl. Bank*, 1999-Ohio-62, ¶ 29, citing *S & D Mechanical Contrs., Inc. v. Enting Water Conditioning Sys., Inc.*, 71 Ohio App.3d 228 (2d Dist. 1991). "However, the obligation to mitigate is not unlimited; the party is not expected to incur extraordinary expenses or to do what is unreasonable or impracticable." *Id.*, citing *Lucky Discount Lumber Co. v. Machine Tools of Am.*, 2009-Ohio-534, ¶ 12 (2d Dist.). "In mitigating damages, an injured party must use only ordinary and reasonable effort to avoid or lessen the damages." *Id.*, citing *Abroms v. Synergy Bldg. Sys.*, 2011-Ohio-2180, ¶ 58 (2d Dist.), citing *Lucky Discount Lumber* at ¶ 12. "The defendant against whom the claim is made has the burden

20

to demonstrate the injured plaintiff's failure to mitigate damages." *Id*., citing *Kanistros v. Holeman*, 2005-Ohio-660, ¶ 37 (2d Dist.).

**{¶ 53}** As previously discussed, Newman is liable to Veritext for the unpaid court-reporting-service fees at issue, not Newman's clients. Although some of Newman's clients chose to pay Veritext directly for some of the unpaid fees, the fact remains that Veritext had no agreement with Newman's clients as to its court-reporting services. Veritext's agreement was solely with Newman. Because Veritext had no agreement or prior relationship with Newman's clients, it would have been unreasonable for the trial court to find that Veritext had a duty to mitigate its damages by pursuing direct collection efforts against them. Newman's clients are third parties whom Veritext has no leverage against, as Veritext lacks standing to sue them for the fees owed. It would have been impractical for Veritext to spend time and effort attempting to collect from individuals who have no legal incentive to pay it. While Veritext did accept some direct payments from Newman's clients, we find that it was not required to continue such collection efforts as a form of mitigation. Instead, it was reasonable for Veritext to focus on the directly responsible party, Newman. We, therefore, find that Newman's mitigation argument lacks merit and that the trial court's award of damages was not an abuse of discretion.

**{¶ 54}** Newman's fourth assignment of error is overruled.

### Conclusion

**{¶ 55}** Having overruled all four of Newman's assignments of error, the trial court's judgment granting partial summary judgment to Veritext on its claim on account and awarding damages is affirmed.

. . . . . . . . . . . . .

LEWIS, P.J., and TUCKER, J., concur.

21